**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER BELCASTRO** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.  17 C 1682** |
| | ) | |
| **v.** | ) | **District Judge Andrea R. Wood** |
| | ) | |
| **UNITED AIRLINES, INC. &** | ) | **Magistrate Judge Jeffrey Cummings** |
| **JAMES SIMONS** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff Christopher Belcastro's ("Belcastro") amended motion to compel responses to written discovery requests that were issued to defendants United Airlines, Inc. ("United") and James Simons ("Simons").  (Dckt. # 74).  Also before the Court is defendants' motion to file a sur-reply to the briefing that has followed plaintiff's motion.  (Dckt. # 90).  The Court rules on these motions under District Judge Andrea R. Wood's referral for a decision pursuant to N.D. Ill. Rule 72.1.  (Dckt. # 99).  Based on the parties' briefs, the Court finds that plaintiff's motion is granted in part and denied in part.  Defendants' motion is denied.

## I.  BACKGROUND

Belcastro started working for United on April 7, 2015 as a First Officer pilot.[1]  (Dckt. # 54 at ¶ 8).  Belcastro resides in Ohio and worked out of Dulles International Airport in Dulles, Virginia during his employment with United.  (*Id.* at ¶¶ 2, Ex. A).  Pursuant to United's policy and the United Pilot Agreement, he spent his first 12 months on probation – a period that was set to end on April 7, 2016.  (*Id.* at ¶ 8).  Prior to and during Belcastro's employment, he was also

---

[1] The background of this case is derived from the District Court's April 19, 2018 opinion denying defendants' motion to transfer venue and granting their partial motion to dismiss, as well as Belcastro's Amended Complaint.  (Dckt. ## 53, 54).  The Court makes no finding of fact based on the allegations in the Amended Complaint.

an active participant in the Air Line Pilots Association, International ("Association"), a union that represents more than 55,000 professional airline pilots in the United States and Canada. (*Id*. at ¶ 9). According to Belcastro, his affiliation with the Association was well known among United's management. (*Id*. at ¶ 10).

In February 2016, Belcastro applied for a pilot vacancy in a 320 Airbus that flew out of Chicago's O'Hare Airport. (*Id*. at ¶ 11). He was awarded the position on or about March 7, 2016. As a result, his flights started and ended at O'Hare. (*Id*.). On March 2, 2016, meanwhile, United's crew-scheduling team attempted to contact Belcastro on his cell phone about a reserve flying assignment – one at 5:56 p.m. and the other at 9:45 p.m. (*Id*. at 12). The second message stated that the crew was calling to remind Belcastro of his March 3, 2016 assignment and asked him to call back. (*Id*.). The message also stated that if Belcastro did not do so, the crew-scheduling team would call again at midnight. The crew did not do so, however, and Belcastro never acknowledged the assignment. (*Id*.).

On the morning of March 3, 2016, United's crew-scheduling department designated Belcastro as Unable to Contact ("UTC") for the reserve-day flying assignment. (*Id*.). The UTC designation meant that Belcastro's pay would be docked. (*Id*. at ¶ 13). That same day, Flight Manager Jonathan Sawyer ordered Belcastro to appear before Chief Pilot James Simons on March 17, 2016 to discuss the UTC designation. (*Id*. at ¶ 14). Belcastro sought help from the Association regarding the issue, telling the union's representatives that he never received a post-midnight confirmation call from the crew-scheduling team. (*Id*. at ¶ 15). The Association asked a crew-scheduling representative to review the UTC designation and to remove it from Belcastro's file. A crew-scheduling supervisor agreed that the UTC designation was not justified under the circumstances and removed the notation from Belcastro's master file. (*Id*. at ¶ 16).

Shortly afterwards, however, Simons instructed the director of labor relations to reinstate the UTC notation. (*Id*. at ¶ 18).

On March 17, 2016, Belcastro, accompanied by an Association representative, appeared before Simons and Human Resources representative Donna Titmus. (*Id*. at ¶ 20). During that meeting, Simons told Belcastro that he would receive a Letter of Counsel as punishment for his UTC infraction. (*Id*. at ¶ 20). Belcastro and Simons met again on March 25, 2016 in Cleveland, Ohio. This time, however, Simons gave Belcastro a resignation letter. Simons allegedly told Belcastro that if he left the office without signing the letter, he would be terminated. (*Id*. at ¶ 24). Belcastro pleaded with Simons to give him a "last-chance agreement" instead of terminating him, but Simons allegedly responded by telling Belcastro that "there are thousands of pilots who want the opportunity you had and will make sure they never miss a day of work. My Black friend who flies Air Force One would love to be a pilot at United, but, for some reason, hasn't gotten hired yet. Now, are you going to sign the resignation letter or are we going to go through the termination process?" Belcastro then signed the letter. (*Id*. at ¶ 25).

Despite receiving a signed resignation letter, Belcastro claims that United coded the end of his employment as a termination. (*Id*. at ¶ 26). Belcastro alleges that United published the false termination status to third parties, which has negatively affected his professional status. (*Id*. at ¶ 29). He further claims that Simons, who is African-American, forced Belcastro to resign because he is white. According to Belcastro, similarly-situated white pilots whose employment status is controlled by white chief pilots have not been forced to resign. (*Id*. at ¶ 28). Additionally, Association representative have told Belcastro that Simons "does not like the union." (*Id*. at ¶ 15).

Belcastro filed a five-count complaint alleging (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; (2) wrongful discharge in violation of the Railway Labor Act, 45 U.S.C. § 141 *et seq*.; (3) a violation of the Illinois Personnel Record Review Act ("IPRRA"), 820 ILCS 40/0.01 *et seq*.; (4) defamation; and (5) tortious interference with employment. On April 19, 2018, the District Court dismissed Belcastro's claims for wrongful discharge, the IPRRA violation, defamation, and tortious interference. (Dckt. # 53). Belcastro then filed an Amended Complaint on May 10, 2018 that reasserted his Title VII claim and restated the grounds for defamation and tortious interference with employment against defendant Simon. (Dckt. # 54).

On May 18, 2018, Belcastro issued his First Set of Interrogatories and Requests for Production. (Dckt. # 74 at Ex. A). Defendants responded on July 2, 2018, and a series of back-and-forth negotiations between the parties quickly ensued. Defendants supplemented their discovery responses on September 18, 2018, and on October 19, 2018 Belcastro filed the instant amended motion to compel defendants to answer a wide range of interrogatories and requests for production. Following plaintiff's deposition, defendants moved on January 23, 2019 for leave to file a sur-reply to the briefing followed Belcastro's motion.

The parties engaged in considerable discussion about Belcastro's discovery requests. On March 15, 2019, the parties filed a joint status report that identified a range of these requests that they had been able to resolve without Court intervention. (Dckt. # 97). The Court directed the parties to continue their discussions, and on March 26, 2019 they reported that they had not been able to agree on any of the remaining issues in Belcastro's motion. (Dckt. # 103). The Court now rules on the parties' remaining disputes.

## II.  LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a).  Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules.  *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018).  Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1). Discoverable information is not limited to evidence admissible at trial.  Instead, such information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.

As this broad standard suggest, discovery is not restricted to the narrow scope of a legal claim.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.").  Nor is relevance defined during discovery the same way that it is at trial. Discovery is ordinarily allowed "if there is any possibility that the information sought may be relevant to the subject matter of the action."  *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997); *see also Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D.Ill. 2004) ("If relevance is in doubt, courts should err on the side of permissive discovery.").  The party opposing discovery bears the burden of showing why it should be disallowed.  *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

# III. DISCUSSION

Belcastro challenges 41 of Defendants' discovery responses.[2] For the sake of clarity, the Court considers Belcastro's motion in two stages. The Court first addresses several broad issues that Belcastro raises such as defendants' privilege log and discovery objections that arise throughout defendants' responses. The Court then turns to the 41 disputes and addresses each in turn.

## A.    General Issues

## 1.    Verification

Federal Rule of Civil Procedure 33(b) requires the individual who answers interrogatories to sign them. *See* Fed.R.Civ.P. 33(b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections."). If the responding party is a corporation, a company officer or agent must sign the responses. Fed.R.Civ.P. 33(b)(1)(B). The interrogatory answer must also be verified. *Villareal v. El Chile, Inc*., 266 F.R.D. 207, 211 (N.D. Ill. 2010). Belcastro objects to defendant Simons' signature to his interrogatories, which included the statement that "that I do not have first-hand knowledge of all matters set forth therein." (Dckt. # 74 at Ex. B). Citing no authority, Belcastro argues that Simons' response is inadequate and that he is obligated to state which responses he has first knowledge of and which he does not.

---

[2] Unfortunately, neither party has addressed more than a few of these disputed requests on an individual basis. Belcastro's motion contains several charts that gather language from a wide range of requests that defendants objected to on various grounds such as vagueness or ambiguity. That fails to address the materials that are actually at issue in the disputed requests. Defendants claim that Belcastro's motion is frivolous, but they also fail to discuss more than a handful of the requests individually. The parties have also submitted several letters they exchanged *before* the response and reply briefs were filed that add additional layers of objections and concessions concerning the discovery dispute. It is not the duty of a court to review every communication between the parties to ferret out their shifting negotiations over discovery requests; that is the task of the briefs themselves. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The Court disagrees. It is well established that a "party answering an interrogatory must provide the non-privileged, responsive information he has, *whether or not he has personal knowledge* or admissible evidence of the matter." *Luster v. Ill. Dept. of Corrections*, 652 F.3d 726, 731 n.2 (7th Cir. 2011) (emphasis added); *see also Gingerich v. City of Elkhart Probation Dept.*, 273 F.R.D. 532, 541 (N.D.Ind. 2011) (stating that a responding agent does not have to have personal knowledge of events); *Dickerson v. Holsten Mgt. Corp.*, No. 10 C 1419, 2012 WL 4483791, at *4 (N.D.Ill. Sept. 27, 2012).

**2.    Burdensomeness**

Defendant United objected to Belcastro's Interrogatories 4, 5, 6, 7, 8, 12, 16, and 22 as unduly burdensome. Simons made the same objection to Interrogatories 15, 16, 17, and 18. (Dckt. # 74 at Exs. H & I). Both defendants also claimed that many of Belcastro's requests for production were objectionable on that ground. Belcastro argues that these objections should be stricken because they are merely boilerplate statements that defendants have not tailored to any of his individual requests. As Belcastro notes, the party that objects to a discovery request bears the burden of showing why the request is improper. "That burden cannot be met by a reflexive invocation of 'the same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome' or that it is 'neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D.Ill. Aug. 2, 2006), *quoting Swift v. First USA Bank*, No. 98 C 8238, 1999 WL 1212561, at *7 (N.D.Ill. Dec. 15, 1999).

The Court agrees that broad objections to discovery that do not address the specific interrogatory or document request to which they are posed "are tantamount to not making any objection at all." *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, No. 15

7

C 10340, 2017 WL 5890923, at *2 (N.D.Ill. Nov. 29, 2017). That is especially true when a party claims that a request is unduly burdensome. Such an objection "must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Rawat v. Navistar Intern. Corp.* No. 08 C 4305, 2011 WL 3876957, at *8 (N.D.Ill. Sept. 1, 2011) (citation omitted); *see also Baxter Int'l. Inc. v. AXA Versicherung*, 320 F.R.D. 158, 166 (N.D.Ill. 2017) (explaining that the objecting party must "specifically demonstrate the burden that the discovery would impose").

None of the defendants' objections based on burdensomeness meet this standard. Belcastro's Request for Production 13 to United, for example, asks for all of United's logs, reports, memoranda, or other documents that are relevant to the UTC designation that Belcastro received when United was unable to reach him by phone. (Dckt. # 74, Ex. D at p. 15). United objected that the request was unduly burdensome because there "could be a considerable number" of responsive documents. (*Id.*). United did not state, however, what documents would have to be reviewed, what costs would be incurred, or how long it would take to respond to Belcastro's requests. A party that relies on a burdensomeness claim must address such issues to sustain its objection. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) (citing cases). Without have done so, all of defendants' objections that Belcastro's discovery requests are unduly burdensome are overruled.

### 3.    Privilege Log

Defendants responded to many of Belcastro's discovery requests by claiming that the information or documents sought were protected by the attorney-client privilege or the work product doctrine. Federal Rule of Civil Procedure 26(b)(5)(A) requires a party who withholds

discovery information on these bases to provide a privilege log that describes the "nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). Defendants in this case submitted a log that identified 28 documents that they claim are protected by the attorney-client privilege. Belcastro argues that defendants' log is inadequate because it does not correlate the documents it cites to any of his specific discovery requests. He also points out that defendants did not cite the work product doctrine for any of the documents in the privilege log. Belcastro asks the Court to find that defendants' failure to do so means that they have waived all of their claims based on that privilege.

The Court agrees that a party can waive a privilege when it fails to provide a log that properly asserts it and does not identify the documents to which it applies. *See*, *e.g.*, *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Phys. Assurance Co., Inc.*, 317 F.R.D. 620, 631-32 (N.D.Ill. 2016) (citing cases). The Court is further concerned by the fact that defendants do not address this issue in their response brief even though they continue to assert the work product doctrine in their argument. (Dckt. # 78 at pp. 9, 22-23). That said, the failure to identify a specific privilege in a privilege log does not always warrant its forfeiture. *See Evans v. City of Chicago*, 231 F.R.D. 302, 317 (N.D.Ill. 2005) ("The Court will not find a waiver of the privilege based on lack of identification in the privilege log.").

Courts have also not agreed on when a privilege log is so impermissibly late that the party who produces it should be found to have waived a privilege. *See Patrick v. City of Chicago*, 111 F.Supp.3d 909, 913 (N.D.Ill. 2015) (citing conflicting cases). As *Patrick* states, the decision concerning the waiver of a privilege based on a privilege log is discretionary. *Id*.

Belcastro has not cited any authority to support a waiver in this case. *See id*. (finding that the failure to do more than make a conclusory statement "waived the waiver argument"). Instead of finding that defendants have waived their work product objections, the Court finds that defendants should be permitted to revise their privilege log within 14 days of the issuance of this order to assert the privilege for those documents that they believe it covers.

The Court also disagrees with Belcastro that defendants should be required to identify the discovery requests that each of the items in the privilege log respond to. Belcastro does not argue that any of defendants' claims concerning the attorney-client privilege are deficient. Accordingly, requiring defendants to correlate the privilege log entries with specific discovery requests would add nothing to the discovery process – except additional costs – because Belcastro would be prohibited from viewing the documents no matter what individual requests they address.

### 4. Confidential Business Information

Defendants answered 36 of Belcastro's discovery requests by claiming that responding to them would disclose confidential business information or the private information of third parties. All of defendants' confidentiality objections are overruled on two grounds. First, defendants do not address the issue in their response brief, thereby waiving their objections. *Whitlow v. Martin*, 259 F.R.D. 349, 353 n.2 (C.D.Ill. 2009) (stating that a party abandons a discovery objection by failing to address it in response to a motion to compel). Second, defendants overlook that the parties entered into an Agreed Confidentiality Order on July 17, 2018 that sets out procedures for the production of confidential business information, trade secrets, and the personnel records of persons who are not a party to this litigation. (Dckt. # 64 at ¶¶ 2, 5). Defendants have not

explained why that order is insufficient to protect the information they want to withhold based on confidentiality. Thus, all of defendants' objections on these grounds are overruled.

### 5. Proportionality

Defendants objected to many of Belcsatro's discovery requests by claiming that they were not proportional to the needs of this case. Federal Rule of Civil Procedure 26(b)(2)(C)(iii) allows a court to restrict the scope of discovery if the expense involved outweighs the likely benefit of production. Courts decide if that is the case by considering "the needs of the case, the amount in controversy, the resources of the parties, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *In re IKB Deutsche Industriebank AG*, No. 9 C 7852, 2010 WL 1526070, at *5 (N.D.Ill. April 8, 2010).

As with their objections related to burdensomeness, defendants have not addressed this issue in their response brief and did not assert anything more than bare objections in their discovery responses. The Court cannot sustain a proportionality objection without a specific showing of the burden that the objecting party would endure and why it is disproportionate to the needs of the cast. *In re Aircrash Disaster*, 172 F.R.D. at 307 ("An objection to a document request must clearly specify the objection and how that objection relates to the documents being demanded."). Accordingly, all of defendants' proportionality objections are overruled.

### B. Specific Requests

### 1. Interrogatory 1 to United and Interrogatory 1 to Simon

Interrogatories 1 to United and Simon ask both defendants to identify the "individuals who assisted in answering these interrogatories." (Dckt. # 4, Ex. H at p. 4; Ex. I at pp. 4-5). Defendants objected on several grounds but only rely on three in their response to Belcastro's motion. Defendants first claim that the requests are vague and overly broad. On September 16,

2018, however, Belcastro clarified in a letter that he sought the names of persons who assisted "in substantively answering the interrogatories" by either providing documents or oral information to defendants' counsel, not the potential subgroup of administrative assistants who might have helped respond to the requests. (Dckt. # 74, Ex. F at p. 2). Defendants have not provided any explanation of why Belcastro's narrowed request is vague or overly broad, thereby failing to carry their burden of showing why they should not be required to answer it.

Defendants also claim that the attorney-client privilege and the work product doctrine protect them from responding to Belcastro's requests. Defendants have made no showing, however, of why these privileges apply. The work product doctrine protects materials or information that an attorney or a representative of a party prepares or gathers in anticipation of litigation. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010); *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc*., 145 F.R.D. 84, 86 (N.D.Ill. 1992) (noting that the work product doctrine is broader than the attorney-client privilege).

Instead of explaining how their attorneys' mental impressions or legal strategies would be revealed, defendants cite – without explanation – a number of cases for the proposition that the work product doctrine protects a party from identifying the individuals it has interviewed as part of the litigation. *See*, *e.g.*, *Bd. of Educ. of Evanston Tp. High Sch. Dist. No. 202 v. Admiral Heating and Ventilating, Inc*., 104 F.R.D. 23, 32 (N.D.Ill. 1984). Contrary to defendants' claim, *Admiral Heating* has no application to this case. The work product doctrine applied in *Admiral Heating* because the disputed request sought not only the names of those whom opposing counsel interviewed but also "where and when such interviews took place and whether or not a record was made" -- *i.e.*, information that could give "significant insights into the defense lawyers' preparation of their case." *Id*. Belcastro is not seeking anything that approaches the

breadth of these inquiries; rather, he only asks for the names of persons who assisted defendants "in substantially answering the interrogatories." *Admiral Heating* recognized that a party "may property inquire into the identity and location of persons having knowledge of relevant facts" in an interrogatory. *Id.* (citation omitted).

Defendants also fail to show why the attorney-client privilege applies to Belcastro's interrogatories. Only communications made for the purpose of obtaining legal advice are protected by the attorney-client privilege. *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990). Defendants' conclusory claims of attorney-client privilege do not even argue this standard is met here. *See Schacher v. Am. Acad. of Ophthalmology, Inc*., 106 F.R.D. 187, 191 (N.D.Ill. 1985) ("The party claiming the privilege has the burden of showing the specific facts giving rise to the privilege; blanket claims of privilege are improper."). Accordingly, Belcastro's motion is **GRANTED** on these interrogatories.

### 2. Interrogatory 2 to United and Interrogatory 2 to Simon

These interrogatories ask defendants to identify all of the individuals "with knowledge of the allegations set out in the Complaint." (Dckt. # 74, Ex. H at p. 5; Ex. I at p. 5). Defendants responded that these requests were barred by the work product doctrine and the attorney-client privilege. Those privileges do not apply for the reasons just stated, and defendants abandon them in their response to Belcastro's motion.

The response brief also states that the interrogatories are overly broad, irrelevant, and disproportional to the case. (Dckt. # 78 at p. 10 & n.7). Those objections are unavailing because defendants did not raise them in their responses to the interrogatories. Rule 33 expressly states that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed.R.Civ.P. 33(b)(4); *see also Buonauro v. City of Berwyn*, No. 08 C

6687, 2011 WL 116870, at *4 (N.D.Ill. Jan. 10, 2011). The Court need not address whether good cause exists in this case because defendants do not ask the Court to do in their response.

Defendants further claim that they are unable to answer the interrogatories because they cannot understand what is meant by "knowledge." This objection is questionable on its face. Moreover, defendants understood the request enough to refer Belcastro to their Rule 26 disclosures. Rule 26(a) requires a party to provide the names, addresses, and phone numbers of each individual "likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]" Fed.R.Civ.P. 26(a)(1)(A)(i). The Court agrees that persons with "knowledge" can be adequately defined as those "likely to have discoverable information" about Belcastro's allegations. Defendants should therefore identify those individuals who meet this criterion, and they should do so whether or not defendants may use these individuals to support their defenses. Belcastro's motion is **GRANTED** on these terms.

### 3. Interrogatories 3 and 22 to United

Interrogatory 3 asks United to describe its "standard operating procedures" for maintaining the files of a probationary pilot like Belcastro after a "separation from employment." (Dckt. #74, Ex. H at p. 6). United posed numerous objections but responded by stating that reports are made by the Captain who flies with a probationary pilot and that documents are kept at the airport where the pilot was based. In this case, that was Dulles International Airport for the period of April 2015 through March 2016. Interrogatory No. 22 asks United to identify the persons responsible for maintaining the probationary pilots' reports. United referred Belcastro to its answer for Interrogatory No. 3.

In a November 9, 2018 letter that pre-dates defendants' response brief, Belcastro states that defendants produced a number of documents that appear to involve probationary pilot reports related to Belcastro. (Dckt. # 84 at Ex. Q). Belcastro explains that these documents would resolve his dispute with United's response to Interrogatories 3 and 22 if United would affirm under oath that they "constituted the reports maintained by the Dulles Chief Pilot's Office for Belcastro." (*Id*. at p. 3). United responds that it "clearly indicated" that was the case, but United fails to inform the Court about what that involved or when the explanation took place. (Dckt. # 78 at p. 11). Given the limited nature of what Belcastro is now seeking in relation to these interrogatories, United is directed to provide Belcastro with an affidavit stating that the documents it has produced in response to these interrogatories constitute all of the relevant information that defendants have about the probationary pilot reports related to Belcastro. *See Ball v. Kotter*, No. 08 C 1613, 2009 WL 3824709, at *1 (N.D.Ill. Nov. 12, 2009) (noting that a party may be required to produce an affidavit stating that all relevant discovery has been identified). The affidavit should be submitted within 14 days of the issuance of this order. The motion is **GRANTED** on these limited grounds.

### 4. Interrogatory 4 to United

Interrogatory 4 asks United to state the number of pilots it employed during the time period relevant to this case "who received some form of discipline in regards to conduct." It also seeks a range of additional information such as the kind of conduct involved, the discipline that was applied, and whether the pilot was terminated. (Dckt. # 74 at Ex. H). United's supplemental response stated that United would produce all non-privileged documents for probationary pilots who reported to defendant Simons at the Dulles Airport between 2015 and 2016 for "dependability issues."

Belcastro's motion fails to explain what is insufficient with this response. His motion refers to Interrogatory No. 4 in a lengthy – and largely unhelpful – chart that groups together various phrases and words in the discovery requests that defendants claimed were vague, ambiguous, or overly broad. (Dckt. # 74 at p. 9). That fails to explain what part of United's supplemental response is inadequate. The party opposing discovery does not carry the sole burden in a motion to compel. When some response has been made, "[t]he burden in a motion to compel resets with the party seeking discovery to explain why the opposing party's responses are inadequate." *MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *6 (N.D.Ill. Jan. 20, 2011) (citing *Whitlow*, 259 F.R.D. at 256)). Belcastro has not done so, and his motion is **DENIED** on this request.

### 5.      Interrogatory 5 to United

Interrogatory 5 seeks the number of United pilots who resigned or were terminated "as a result of a UTC designation" during the relevant time period, as well as their age, gender, and race. (Dckt. # 74 at Ex. H). Belcastro subsequently dropped the demand for the ages and genders of the pilots at issue in Interrogatories 4-7 to United. (Dckt. # 84, Ex. Q at p. 5). United's original response referred Belcastro to the response for Interrogatory No. 4. The supplemental response stated that no probationary pilot who reported to defendant Simons between 2015 and 2016 was given an opportunity to resign or was terminated for a dependability issue.

United does not address this interrogatory in its response brief. It is clear, however, that its supplemental response does not address Belcastro's request, which is not limited to pilots under Simons' supervision. Belcastro notes in his reply brief that United has identified a group of individuals who participated in the decision that led to Belcastro's departure from United.

This includes Mickey Malowney, Bo Ellis, Chad Melby, Donna Titmus, and defendant James Simons. (Dckt. # 84 at p. 11). Belcastro asks the Court to require United to identify probationary pilots who were terminated or forced to resign by *this* group of individuals. Given United's silence and the liberal scope of discovery, Belcastro's motion is **GRANTED** on the terms stated by Belcastro. Nevertheless, United is only required to provide information for employees like Belcastro who were probationary pilots, not all pilots who were employed in 2015 and 2016.

### 6. Interrogatory 6 to United

Interrogatory 6 seeks the number of pilots under Simons' supervision who "received some form of discipline" during the relevant time period. It also requests the pilots' age, gender, race, nature of the conduct involved, the discipline applied, and whether the pilot resigned or was terminated. United referred Belcastro to its answer for Interrogatory No. 4, which stated that no probationary pilot met the criteria of this request. (Dckt. # 74 at Ex. H, p. 8). Neither Belcastro's motion nor his reply brief explains why that answer does not address the request. The motion is therefore **DENIED** on Interrogatory 6.

### 7. Interrogatory 7 to United and Interrogatory 7 to Simons

These parallel interrogatories ask the defendants to identify the pilots under Simons' supervision who resigned or were terminated as a result of a UTC designation during the relevant time period. As with Interrogatory No. 6 to United, the defendants referred Belcastro to their response to Interrogatory No. 4 to United. That is sufficient for the reasons addressed in Interrogatory No. 6 to United. The motion is **DENIED** on these requests.

### 8. Interrogatory 8 to United

Interrogatory 8 asks United to identify all grievances, complaints, or allegations of misconduct asserted against defendant Simons for the past ten years. United answered that no formal grievances or allegations were made between 2015 and 2016. (Dckt. # 74, Ex. H at pp. 10-11). Belcastro's motion concedes that the period of his employment is the relevant time period for his discovery requests. (Dckt. # 74 at p. 23). Belcastro does not address what more is needed to respond to Interrogatory No. 8, and his motion is **DENIED** concerning it.

### 9. Interrogatory 10 to United and Interrogatories 6 and 10 to Simons

These related requests ask defendants to identify all the individuals who participated in or reviewed Belcastro's resignation from United. In addition, the interrogatories to Simons ask him to produce the documents that he relied on to answer Interrogatory No. 6 and, in Interrogatory No. 10, to identify those individuals he consulted with as part of his actions. Both defendants referred Belcastro to a series of documents they produced under various Bates numbers. (Dckt. # 74, Ex. H at p.12; Ex. I at pp. 7, 10). Although the documents are not available to the Court, Belcastro states in his November 9, 2018 letter that they are emails sent by the same group of individuals identified in relation to Interrogatory No. 5 – Malowney, Ellis, Melby, Titmus, and Simons. The letter notes that the emails also refer to "James," "Howard," and "Chad." Belcastro appears to ask only that United confirm that these names refer to Chad Melby, Howard Attarian, and James Simons. (Dckt. # 84, Ex. Q at p. 6). United is directed to do so. Absent any further discussion of Interrogatory No. 10 in Belcastro's reply brief, the motion is **GRANTED** to the extent specified immediately above.

### 10. Interrogatory 12 to United

Interrogatory 12 asks United to identify the supervisor of "UAL's crew scheduling departments [sic] issuance of UTCs." (Dckt. # 74, Ex. H at p. 12). United originally objected that the request was temporally overbroad, but Belcastro subsequently limited the interrogatory to the time period in which he was employed by United. (Dckt. # 84, Ex. Q at p. 7). United claims in its response brief that the phrase "individual responsible for supervising" is vague but fails to explain why the request is so vague that United cannot make any reasonable response to it. (Dckt. # 78 at p. 17). The Court finds that United can easily answer the request either by naming the manager or supervisor in charge of the scheduling department or, if no such person exists in United's corporate structure exists, explaining that fact.

United also claims that Belcastro's request is not relevant but does not explain its reason for such an objection. "For the purpose of discovery, relevancy will be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D.Ill. 2001), *quoting Oppenheimer Fund*, 437 U.S. at 351. The Court finds that Belcastro's request is not so broad that it exceeds this liberal standard. The motion is therefore **GRANTED** on Interrogatory No. 12.

### 11. Interrogatory 14 to United

Interrogatory 14 asks United to identify those persons who participated in placing the UTC designation on Belcastro's master schedule. United's supplemental answer referred Belcastro to four documents that it produced. (Dckt. # 74, Ex. H at pp. 13-14). Belcastro has not explained what those documents contain or why they fail to respond to his request adequately.

That fails to explain why United's response is inadequate.  *See MSTG*, 2011 WL 221771, at *6.

The motion is **DENIED** on this issue.

### 12.    Interrogatories 15 and 17 to United

Interrogatory 15 asks United to identify those persons who were involved in removing

the UTC designation from Belcastro's schedule.  Interrogatory No. 17 seeks the identity of those

who were involved in reinstating the UTC designation. United's supplemental responses for both

requests referred Belcastro to the same four documents referenced in its response to

Interrogatory No. 14.  The motion is **DENIED** on these requests for the same reason just stated

for Interrogatory No. 14.

### 13.    Interrogatory 18 to United

Interrogatory 18 asks for the names of those individuals who "participated, reviewed,

and/or authorized the issuance of a letter of counsel" that was sent to Belcastro on March 16,

2016.  It is not clear what United's objections to this request are.  Defendant claimed in its

original objections that the attorney-client privilege and the work product doctrine protected

them from responding to the request, but United abandons those claims in the response brief.

Instead, the response combines this request with eight other interrogatories that United claims

"are sloppy, argumentative conclusions based solely on Plaintiff's allegations for which [sic]

Defendants deny in their answer and/or cannot find any support to even formulate an answer."

(Dckt. # 78 at p. 15).

The Court is unable to follow the basis of United's statement concerning Interrogatory

No. 10.  The response brief italicizes the phrase "letter of counsel," suggesting that the letter

itself is the source of defendant's objection to the request.  (*Id*. at p. 15).  Although neither party

has addressed the issue even in minimal form, any confusion concerning the alleged March 16,

2016 is easily resolved.  Since Belcastro presumably possesses the letter as its recipient, he is directed to provide a copy of it to United within five days of the issuance of this order.  United will then be able to respond to the rest of Belcastro's request which, despite defendant's objections, is not vague or ambiguous once the letter has been clearly identified.  The motion is **GRANTED** on these terms.

### 14.    Interrogatories 15, 16, and 17 to Simons

This series of interrogatories asks Simons to (1) identify the pilots under his supervision who resigned or were terminated and the reason for such an employment action, (2) the pilots whom Simons terminated due to a UTC designation, and (3) the pilots he disciplined by means other than termination for a UTC designation.  Simons' supplemental responses answered these requests with the same response:  "Other than Plaintiff, no probationary pilot who reported to Chief Pilot Simons at Washington Dulles at any time between 2015 and 2016 was offered the opportunity to resign or was terminated for dependability issues, including a UTC designation." (Dckt. # 74, Ex. I at pp. 12-14).

This response adequately answers Interrogatories 15 and 16, given that Belcastro does not challenge defendants' limitation of the relevant time period to 2015 and 2016.  The answer, however, is not fully responsive to Interrogatory 17.  Belcastro asked Simons in that request to identify pilots who were disciplined "in a manner *other than termination* as a result of an 'unable to contact' designation."  (Dckt. # 74, Ex. I at p. 13) (emphasis added).  Simons' response that no pilot "was offered the opportunity to resign or was terminated" does not clarify whether pilots were disciplined by some means other than the resignation/termination that Belcastro alleges he received.  If that were the case, it would clearly be relevant to Belcastro's Title VII claim.  "A request for discovery should be considered relevant if there is any possibility that the information

sought may be relevant to the subject matter of the action." *E.E.O.C. v. Klockner H&K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D.Wis. 1996) (internal quotes and citation omitted). Simons is directed to supplement his response to Interrogatory No. 17.[3] The motion is **GRANTED** on this interrogatory but **DENIED** concerning Interrogatory Nos. 15 and 16.

### 15. Interrogatory 19 to Simons

Interrogatory No. 19 asks Simons to state if he sought authorization from UAL prior to terminating Belcastro and, if he did, to identify the individuals with whom he spoke. Simons' supplemental response identified seven documents by citing their Bates numbers. (Dckt. # 74, Ex. I at p. 15). Belcastro has not explained what these documents are or why they are unresponsive to his request. Without any information concerning the contents of Simons' response, the Court has no basis on which to find that his answer is incomplete or unresponsive. The motion is therefore **DENIED** on Interrogatory No. 19.

### 16. Request For Production 3 to United

Request No. 3 asks United to produce all communications between it and any third party that relates to the allegations in Belcastro's Complaint. United responded that it would turn over all non-privileged documents related to Belcastro's employment between April 2015 and March 2016. In its supplemental response, United referred Belcastro to seven pages of documents that United identified by their Bates numbers. (Dckt. # 74, Ex. D at p. 7).

---

[3] Interrogatory No. 17 also asks for the gender and age of any pilot that Simons identifies. Belcastro stated in his November 9, 2018 letter that he had withdrawn similar demands for the age and gender of United pilots in Interrogatories 4-7 to United, all of which sought similar information about pilots who were terminated or resigned due to a UTC designation. (Dckt. # 84, Ex. Q at p. 5). Although Belcastro does not address the age and gender portions of the interrogatories to Simons, the Court can discern no difference between these requests and Interrogatories 4-7 to United. Belcastro's Title VII claim is based exclusively on a claim of race discrimination. Absent any showing that the age or gender of the pilots at issue in these requests are relevant, Simons is not required to respond to those portions of Belcastro's discovery requests.

Neither party has directly addressed this request. (Dckt. # 74, Ex. D at 25; Dckt. # 78 at p. 18). United's original discovery objections claimed that Belcastro's request was temporally overbroad, but that issue has been resolved by Belcastro's concession that his term of employment defines the relevant period. (Dckt. # 74 at p. 23).

United also objected to Request No. 3 on the grounds that the terms "third party, "refers or relates," and "matters set for in the Complaint" were vague and ambiguous. Defendant abandons those claims in its response brief, but the Court addresses them because both defendants assert similar – and unwarranted – objections throughout their discovery responses. "Third party" can reasonably be in interpreted as someone who is not an employee of United. "Refers or relates" obviously means "that which is relevant" under the broad standard that governs relevancy in discovery. *See In re Aircrash*, 172 F.R.D. at 303 ("[R]elevant to the subject matter involved in the pending action' is broadly construed to encompass any mater that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case, without limitation to the issues raised in the pleadings."). Furthermore, "matters set forth in the Complaint" carries the common-sense meaning of the allegations and claims stated in Belcastro's Complaint. Insofar as United withheld any non-privileged documents based on these objections, it is directed to supplement its production within 14 days of the issuance of this order. The request is **GRANTED** to this limited extent.

### 17. Request for Production 4 to United

Request No. 4 seeks documents contained in Belcastro's personnel file. United responded that "personnel file" is vague and undefined and that the request did not identify the documents it sought. Subject to those objections, United turned over seven pages to Belcastro that it identified by Bates numbers. (Dckt. # 74, Ex. D at p. 8).

United does not explain whether it has withheld any additional documents based on its objections. Insofar as it has, the Court disagrees that Belcastro's request is vague and undefined. Courts have rejected identical objections to requests for personnel files as ineffective instances of boilerplate objections. *See, e.g.*, *Gingerich v. City of Elkhart Probation Dept.*, 273 F.R.D. 532, 543 (N.D.Ind. 2011), *quoting McGrath v. Everest Nat. Ins. Co.*, 625 F.Supp.2d 660, 670 (N.D.Ind. 2008). Nor is the request so undefined that United cannot identify the documents that Belcastro is seeking. Personnel files include those documents that an employer regularly maintains related to an employee's job qualifications, promotion, compensation, disciplinary action, or discharge. *See Gekas v. Williamson*, 393 Ill.App.3d 573, 588, 912 N.E.2d 347 (4th Dist. 2009) (citing 820 ILCS 40/2 (West 2006)). United is directed to produce any non-privileged documents that it has not yet provided that meet this definition. The request is **GRANTED** on these terms.

### 18. Requests for Production 7 and 8 to United and Request 2 to Simons

This interrelated set of document requests asks United to produce (1) all communications "between the Defendants that refer or relate to Belcastro," (2) communications "between Defendants and Belcastro," and (3) communications between Simons and United that relate to Belcastro and the Complaint. United's original response contained two objections that went beyond mere generic claims that the requests were overly burdensome and disproportionate to the case. United and Simons both claimed that "refer or relate" is vague and could give rise to numerous documents that are not relevant to Belcastro's Complaint. It also claimed that it is unclear who constitutes defendant "United." Notwithstanding, United eventually produced some documents in its supplemental response. (Dckt. # 74, Ex. D at pp. 10-11). Simons produced a smaller subset of the same documents. (Dckt. # 74, Ex. E at p. 6).

Defendants have not explained in their response brief if the documents they produced constitute the full range of available documents or whether the production has been limited in some way by defendants' objections – which are clearly without merit. "Refer or relate" means "relevant" for the reasons just discussed. The fact that numerous documents may be identified is not a ground for not producing them because as discussed earlier, *supra* at pp. 7-8, United has not shown why any of Belcastro's requests are unduly burdensome. Nor have defendants explained in their response brief why it is difficult to identify the individuals whom defendant United comprises. Defendants are therefore directed to supplement their responses to these requests with any additional non-privileged documents that defendants may not have already produced. The motion is **GRANTED** on Requests 7 and 8 to United and Request 2 to Simons.

### 19.     Request for Production 9 to United

Belcastro asks United to provide "all memoranda, meeting minutes, reports or other notations that refer or relate to Belcastro." United responded with many of the same objections that have already been discussed but eventually produced three documents to Belcastro. (Dckt. # 74, Ex. D at pp. 12-13). The parties do not address whether these documents adequately respond to Belcastro's request, making it difficult for the Court to determine what action, if any, should be taken. As before, United should produce any relevant non-privileged documents it may have withheld based on its objections for the period during which Belcastro was employed. The motion is **GRANTED** on that limited basis.

### 20.     Request for Production 10 to United and Request 9 to Simons

Request 10 asks United to produce documents related to any grievance or complaint that had been filed against Simons during the relevant time period. Request 9 is a parallel demand directed to Simons. United responded by stating that it was unaware of any allegation of race

discrimination filed against Simons between 2015 and 2016. (Dckt. # 74, Ex. D. at p. 14).

Belcastro has not challenged United's timeframe of 2015 through 2016 or its limitation of the

grievances to those involving race discrimination. United cannot be required to produce what it

does not have. The motion is therefore **DENIED** on Request No. 10 to United and Request 9 to

Simons.

### 21.    Requests for Production 11 and 12 to United and Request 10 to Simons

Requests 11 and 12 asks United to turn over "all communications" between it and the

E.E.O.C. and the Airline Pilots Association that are relevant to Belcastro's claims in this case.

Request 10 asks Simons to produce communication between himself and the E.E.O.C. related to

Belcastro. Simons referred Belcastro to United's response to Request 11. In its response to both

Requests 11 and 12, United asserted its familiar litany of objections but produced nothing in

response to either request. (Dckt. # 74, Ex. D at pp. 14-15).

Defendants claim in their response brief that these requests are overly broad. (Dckt. # 78

at pp. 18-19). On the contrary, the time period at issue is limited to the narrow range during

which defendants communicated with the E.E.O.C. and the pilots' union. For the E.E.O.C., that

would involve the circumscribed period of United's response to the E.E.O.C. concerning

Belcastro's discrimination complaint. For the pilots' union, the period would presumably be

restricted to the period of Belcastro's employment plus any communications that were made

after it ended.

Defendants also argue that these requests are not relevant for discovery purposes. To the

contrary, the E.E.O.C. communications are clearly relevant to Belcastro's Title VII claim for

discovery purposes. The same is true for any communications that United had with the pilots'

union concerning Belcastro. Defendants overlook that a union representative accompanied

Belcastro when he met with Simons and Donna Titmus on March 17, 2016. Belcastro, who was heavily involved with the union, also demanded that a representative be present when Simons allegedly demanded that he sign a resignation letter on March 25, 2016. (Dckt. # 54 at ¶ 24). The Court recognizes that Belcastro's Amended Complaint no longer contains a wrongful termination claim based on his union activity. Nevertheless, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund*, 437 U.S. at 351; *see also In re Aircrash Disaster*, 172 F.R.D. at 303 (explaining that discovery "is not limited to the merits of a case"). It is *possible* that communications between United and the union could lead to admissible evidence, which is all that is required for a discovery request to be relevant. The motion is **GRANTED** on these terms on all three requests.

### 22. Request for Production 16 to United

This request asks United to produce documents related to "any conduct" of Belcastro's that led his supervisors or United's employees to believe he should receive disciplinary action. United identified six documents in its supplemental response but did not explain there or in its response brief if these were subject to its general objections to the request.[4] (Dckt. # 74, Ex. D at p. 18). Nor does the response state anything specific about this request. Instead, United only refers to Request 16 in a string citation of 21 requests for production. (*Id*. at n.10). United is directed to produce any documents responsive to Request 16 that it may have withheld based on its discovery objections. The motion is **GRANTED** on Request 16.

---

[4] Among other objections, United claimed that Request 16 duplicated Request 7, which sought communications between the defendants that referenced Belcastro. However, the documents that United produced for Request 7 do not match those produced for Request 16. (Dckt. # 74, Ex. D at pp. 10, 18). United is directed to respond fully to Request 16 without relying on any duplication it believes exists between it and Request 7.

### 23. Request for Production 17 to United

Request 17 asks for the "electronic Crew Communication Services system" that is relevant to Belcastro's employment, including his personnel file, monthly pay schedules, pay registries, and master schedule screens. United objected on multiple grounds, including claims of burdensomeness, relevancy, and vagueness that the Court has already addressed. United also stated that the request duplicated Request 4, which sought Belcastro's personnel file, and Request 5, which asked for his master schedule. The Court agrees, and United is not required to duplicate its production of these documents. Requests 4 and 5, however, do not seek Belcastro's monthly pay schedules and pay registries. United is directed to produce all documents on these issues, including documents that are electronically stored. Request 17 is **GRANTED** on that basis.

### 24. Requests for Production 19 and 20 to United

Request 19 seeks all documents concerning pilots who received a UTC designation during the "the relevant time period." Request 20 asks for documents related to a subset of those pilots who were terminated or resigned due to a UTC designation. United responded to both requests by stating that no other probationary pilot other then Belcastro who reported to Simons at Dulles Airport "was offered the opportunity to resign or was terminated for dependability issues, including a UTC designation." (Dckt. # 74, Ex. D at p. 21). That is not responsive to Belcastro's requests. Belcastro is clearly interested in discovering if there are any probationary pilots who, like himself, received the UTC designation but were *not* terminated or forced to resign because of it. That set of individuals, if any, might serve as comparators for Belcastro's Title VII claim that he was treated differently from similarly-situated pilots who were not Caucasian. United limited its response to the period in which Belcastro was employed. The

Court does not address that issue because Belcastro does not ask the Court to extend that period beyond 2015 and 2016.  The motion is **GRANTED** on these terms, and United shall supplement its production accordingly.

### 25.    Request for Production 12 to Simon

Request 21 asks Simons to turn over "all logs, reports, memoranda or other documents that refer or relate to the UTC."  Simons' supplemental response identified 685 documents together with their Bates numbers.  (Dckt. # 74, Ex. E at p. 14).  Belcastro has not explained what these documents are or why they fail to respond adequately to his request.  The motion is **DENIED** on Request 12.

### 26.    Request for Production 15 to Simons

Request 15 seeks for documents that are relevant to any "conduct violations" by Belcastro.  Simons identified six documents in his supplemental response.  As with Request 12 to Simons, Belcastro has not addressed what is insufficient about Simons' production.  The motion is **DENIED** on this issue.

### B.    Defendants' Motion for Leave to File a Sur-reply

On January 23, 2019, Defendants filed a motion for leave to file a sur-reply in response to Belcastro's reply brief.  (Dckt. # 90).  The decision on whether to grant leave for a sur-reply is left to a court's discretion.  *See Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 439 (7th Cir. 1999).  "Courts generally disfavor sur-replies but have discretion to allow them to address new arguments or evidence raised in the reply brief."  *Saunders v. Select Portfolio Servicing, Inc.*, No. 18 C 572, 2019 WL 979609, at *1 (N.D.Ind. Feb. 27, 2019) (internal quotes and citation omitted); *see also Univ. Healthsystem Consortium v. UnitedHealth Group, Inc.*, 68 F.Supp.3d 917, 922 (N.D.Ill. 2014) (stating that sur-replies may be appropriate when new claims

are raised in a reply brief). The purpose of a sur-reply is not to give a party the final word but to protect "the aggrieved party's right to be heard and provide[] the court with the information necessary to make an informed decision." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 329 (N.D.Ill. 2005). A denial is in order "when the movant has had the opportunity to thoroughly brief the issues." *In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d 838, 857 (N.D.Ill. 2015) (internal quotes and citation omitted).

Defendants have not demonstrated that their sur-reply is necessary for the court to address Belcastro's motion to compel. Belcastro's reply brief did not raise any new arguments. In addition, both parties have had ample opportunity to address their dispute in their briefs: Belcastro's motion runs to 30 pages; defendants' response contains 25 pages. Instead of claiming that Belcastro presented new information in his reply, defendants urge the Court to accept their sur-reply because *they* have new evidence – Belcastro's deposition testimony. Defendants deposed Belcastro on November 28, 2018, 14 days after they filed their response brief and almost three weeks before the reply brief was filed. Defendants claim that Belcastro's testimony will assist the Court in considering their discovery objections concerning overbreadth and burdensomeness.

The Court disagrees with defendants on two grounds. First, defendants had every opportunity to address these issues in their response without requiring a sur-reply to do so. Second, they have not shown why Belcastro's deposition testimony is so crucial that a sur-reply is warranted. As one example, defendants clam that their brief is necessary because Belcastro gave important testimony in his deposition about his Title VII claim: he was unaware of any other person supervised by defendant Simons who had the kind of dependability issues that Belcastro had. (Dckt. # 90 at p. 2). Defendants appear to believe that is fatal to Belcastro's

claim of employment discrimination. It might be if this were a summary judgment proceeding where Belcastro would be required to demonstrate each element of his claim. The parties are involved in discovery, however, and Belcastro is attempting to gather the information he needs to pursue his claims. The purpose of discovery is "to allow the plaintiff to collect the facts necessary to flesh out [his] claim and to allow the defendant to ascertain the theory of the case." *Herman v. Wolfe*, No. 96 C 4801, 1998 WL 67639, at *6 (N.D.Ill. Feb. 2, 1998). A plaintiff is not required to have definitive knowledge of all of the facts that might be relevant to his claims in order to proceed with discovery. Absent any showing of why the surreply is necessary to address the reply brief, defendants' motion for leave to file a sur-reply is **DENIED**.

### C.    Attorneys' Fees

Belcastro argues that he is entitled to attorneys' fees for having to bring his motion to compel defendants to respond fully to his discovery requests. Rule 37 provides that if a motion to compel is granted "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A). "The great operative principal of [Rule 37(a)(5)] is that the loser pays." *Rickels v. City of South Bend, Ind*., 33 F.3d 785, 786-87 (7th Cir. 1994). Like their authority in supervising discovery, courts have broad discretion in deciding if fees are warranted under Rule 37(a)(5). *Patterson v. Coca-Cola Bottling Co. Cairo-Sikeston, Inc*., 852 F.2d 280, 283 (7th Cir. 1988). A court may refrain from awarding fees if "other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(5)(A)(iii).

The decision on whether to award fees in this case is close. Defendants claim in their response that Belcastro's motion is frivolous and "incredibl[e]." (Dckt. # 78 at p. 2). That is

clearly not the case, as Belcastro has prevailed on 25 of the 41 issues raised in his motion that remain in dispute. On the other hand, although these numbers show that Belcastro's motion is not frivolous, they do not support his claim that defendants' objections were not substantially justified and were not made in good faith. (Dckt. # 74 at p. 28). Thirteen of the 25 requests that Belcastro prevailed on were decided on a very limited basis: 5 only required confirmation from defendants that their existing responses were accurate; one was based on Belcastro identifying to United what the "letter of concern" in Interrogatory 18 was; and 7 required defendants to supplement their responses *only* because it was unclear that they had not already fully responded. Moreover, Belcastro overlooks that 35 of the 76 discovery requests he cited in his motion were resolved between the parties after the motion was filed without Court action. (Dckt. # 101). Accordingly, Belcastro seeks fees for a motion in which he raised 76 disputes but only persuaded the Court that 12 of those requests should be decided on the clear merits of his argument. This suggests, explained below, *infra* at p. 33, that Belcastro's motion was prematurely filed.

The Court is also concerned with Belcastro's motion itself, which defendants correctly characterize as unhelpful in clarifying the issues. It has certainly made the resolution of this matter more difficult that it needed to be. As noted, *supra* at p. 6 n. 2, the motion is made up largely of tables that gather phrases from multiple discovery requests and challenges them in generic form without addressing any single request. (Dckt. # 74 at p. 10). Indeed, other than Interrogatory 1 to United, the motion fails to discuss any of the disputed requests individually.

The Court recognizes that Rule 37(a)(5) is not concerned with the shortcomings of a party's motion; rather, it addresses the reasons why the prevailing party was required to file a motion to compel. Nevertheless, the lack of clarity in Belcastro's briefs raises concerns about how the discovery process that led up to his motion proceeded. The little the Court has to go on

confirms that concern.  In his November 9, 2018 letter to defendants, Belcastro complains that (1) defendants' earlier November 1, 2018 letter was not a "meaningful attempt" to resolve the parties' dispute and (2) the "most glaring discovery deficiency" was Simons' verification of his interrogatories.  (Dckt. # 84, Ex. Q at p.1).

Neither of these claims is true.  Belcastro ignored well-established caselaw on the verification issue, which presented no obstacle to discovery.  *See supra* at pp. 6-7.  The Court's review of defendants' letter shows that it was far from meaningless.  Defendants complained, for instance, that Belcastro refused to limit his discovery requests about other United pilots to those who were supervised by Simons and whose disciplinary actions, if any, were based on race instead of irrelevant criteria such as gender or age.  (Dckt. # 78, Ex. 1 at p. 3).  Those are legitimate objections to requests that asked for more than Belcastro was entitled to receive.  These disputes should easily have been resolved without filing a motion to compel.  The same is true for those responses from defendants that cited Bates-numbered documents.  Belcastro continued to object to a number of those requests in his motion without identifying the documents for the Court or explaining why they were insufficient.

Belcastro's opposition to the items set out in the November 1, 2018 letter might not be matters of concern had they been part of the ordinary back-and-forth that arises in discovery discussions.  In this case, however, these disputes post-date Belcastro's October 19, 2018 motion to compel.  Much of the clarification that Belcastro provided in his November 9, 2018 letter should have taken place *before* he filed the motion.  At a minimum, doing so would have eliminated significant portions of the motion.  That includes the overly-broad requests for the ages and genders of pilots and the verification issue.  For these reasons, the Court finds that

"other circumstances" weigh against awarding Belcastro attorneys' fees for his motion. Fed.R.Civ.P. 37(a)(5)(A)(iii). The motion is **DENIED** on the fee issue.

## IV.  CONCLUSION

For all these reasons, Belcastro's amended motion to compel [74] is granted in part and denied in part. Defendants' motion for leave to file a sur-reply [90] is denied. Defendants are directed to provide the amended privilege log and the affidavit within 14 days of the issuance of this order. All other responses must be provided within 30 days of the entry of this order.

**ENTER:**

_____
**Hon. Jeffrey Cummings**
**United States Magistrate Judge**

**DATE:  April 17, 2019.**