IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER N. BELCASTRO, | |
| **Plaintiff,** | |
| v. | Case No. 17 C 1682 |
| UNITED AIRLINES, INC., | |
| **and** | Magistrate Judge Beth W. Jantz |
| JAMES SIMONS, | |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

Plaintiff sued Defendants United Airlines, Inc., and James Simons, raising, as relevant here, claims for race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and for defamation and tortious interference with employment under Illinois state law. Before the Court are Plaintiff's Motion to Compel Certain Documents Identified in Defendants' Revised Supplemental Privilege Log, [dkt. 193], and Defendants' Motion to Compel Documents Improperly Withheld on the Basis of Privilege, [dkt. 191].

For the reasons explained below, Plaintiff's motion to compel is denied, and Defendants' motion to compel is denied in part. The Court reserves ruling on the part of Defendants' motion to compel concerning documents Plaintiff asserts are protected by an employee-union representative privilege pending an updated *in*

*camera* submission from Plaintiff, as ordered by the Court on January 4, 2021, [dkt. 210].

## RELEVANT BACKGROUND

The following allegations are drawn from Plaintiff's amended complaint. [Dkt. 54, Am. Compl.]  In April 2015, United Airlines, Inc., ("United"), hired Plaintiff Christopher Belcastro as a First Officer pilot with his first 12 months as a "probationary period."  While working for United, Plaintiff was a member of the Airline Pilots Association, International, (the "Association"), and participated in union activities.  On March 3, 2016, United's crew scheduling department designated Plaintiff as "Unable to Contact" after they could not reach him about a reserve day flying assignment.  Plaintiff asked the Association to help overturn the designation, explaining that crew scheduling had never called him after midnight to confirm his assignment.  The Association succeeded in getting crew scheduling to remove the designation, but Defendant Chief Pilot James Simons later had it reinstated.  On March 17, 2016, Simons met with Plaintiff and told him that his "probationary pilot reports and training records" were "outstanding," but that he would receive a "Letter of Counsel" for the designation.

Following that meeting, Chief Pilot Simons obtained permission from the Vice President of Flight Operations Howard Attarian to terminate Plaintiff based on his "purported lack of reliability."  On March 25, 2016, Simons met privately with Plaintiff and asked him to sign a letter of resignation, explaining that if he declined he would have to go through the termination process.  During the meeting,

Simons, who is Black, allegedly commented to Plaintiff, who is White, that he did not know why United hired pilots like Plaintiff and that his "Black friend who flies Air Force One would love to be a pilot at United but, for some reason, hasn't gotten hired yet."  After consulting with his union representative, Plaintiff signed the resignation letter and asked for his probationary pilot reports, which he never received.  United later posted a snapshot of Plaintiff's personnel file, indicating that he had been terminated, on a popular pilot website.  Defendants largely deny these allegations of wrongdoing.  [Dkt. 57, Ans. to Am. Compl.]

In 2017, Plaintiff filed suit in this Court.  [Dkt. 1, Compl.]  In December 2019, the Court ordered Plaintiff to submit to a forensic examination of his electronic devices in order to retrieve documents responsive to Defendants' discovery requests; a protocol governed the parameters of the ESI search (the "ESI Protocol"). [Dkt. 153.]  Following the examination, Plaintiff produced to Defendants a privilege log of the documents not produced from that search.  After lengthy discovery and extensive motion practice on various discovery issues, on October 13, 2020, the Court set a final deadline of October 16 for any remaining motions related to outstanding discovery.  [Dkt. 189.]  On October 15, the parties met and conferred regarding outstanding discovery issues; at the meeting, both parties raised purported deficiencies in the other side's privilege logs.  On October 16, Plaintiff and Defendants each filed motions to compel some of the withheld documents. [Dkt. 193, Pl.'s Mot. to Compel; dkt. 191, Defs.' Mot. to Compel.]  On November 4 and November 25, the Court ordered Plaintiff to produce for *in camera* inspection

the documents over which he claimed privilege, which this Court has now reviewed *in camera*. [Dkt. 201; dkt. 208.]

## DISCUSSION

### I.  Legal Principles

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court has "extremely broad discretion in controlling discovery." *Coleman v. City of Chicago*, No. 1:18-cv-00998, 2019 WL 7049918, at *5 (N.D. Ill. Dec. 23, 2019) (internal quotation marks omitted).

In general, evidentiary privileges are to be construed narrowly because they operate to impede the search for truth. *Medline Indus., Inc. v. Wypetech, LLC*, No. 20 CV 4424, 2020 WL 6681353, at *2 (N.D. Ill. Nov. 12, 2020). The party asserting privilege has the burden to demonstrate that it applies. *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-cv-10706, 2017 WL 4740662, at *1 (N.D. Ill. Oct. 20, 2017).

### II.  Plaintiff's Motion to Compel Certain Documents Identified in Defendants' Revised Supplemental Privilege Log [Dkt. 193]

Plaintiff moves to compel Defendants to produce 16 documents—Defendants' supplemental privilege log entries 4, 6–7, 15, 23, 28–29, 35, 46, 54, 56–59, 62, and Bates No. 000726, see [dkt. 193-1, Exh. A to Pl.'s Mot. to Compel, Defs.' Privilege Log]—arguing that Defendants improperly claimed that those documents are protected by attorney-client privilege. [Dkt. 193 at 1.] Plaintiff contends that the

4

documents are not privileged because they appear to be emails that were merely funneled past an attorney rather than those made for giving or receiving legal advice. [Dkt. 193. at 3–4.] Defendants counter that the communications are privileged because they were made for the purposes of obtaining legal advice from in-house counsel. [Dkt. 200, Defs.' Resp. to Pl.'s Mot. to Compel, at 10–14.]

Because Defendants assert that attorney-client privilege blocks disclosure of these documents, they "must establish that (1) legal advice of any kind was sought, (2) the legal advice was sought from a professional legal advisor in his or her capacity as such, (3) the communications related to that purpose, and (4) the communication was made in confidence." *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *2 (N.D. Ill. July 14, 2020). "Communications in which counsel is not a sender or recipient may also be privileged if they 'reveal, directly or indirectly, the substance of a confidential attorney-client communication.'" *Id.* (quoting *Crabtree*, 2017 WL 4740662, at *2). On the other hand, merely including counsel on a communication "containing business advice or information or containing something other than legal advice" is insufficient to make the document privileged. *Washtenaw Cnty.*, 2020 WL 3977944, at *5.

To begin, Defendants explain that entries 4, 6, and 7 are part of a larger email chain (entries 1–7) that began internally after Plaintiff emailed Howard Attarian, United's Senior Vice President of Flight Operations, about getting back his job. [Dkt. 200 at 12.] Attarian followed up with an email to Brian Quigley, a

managing director, and copied Sheila Frederick, United's legal counsel. [Dkt. 193-1 at 2–3.] Defendants represent that Attarian was seeking legal advice regarding Plaintiff's inquiry about getting back his job. [Dkt. 200 at 12.] Following that initial email, Attarian, Quigley, and attorney Frederick exchanged six additional emails, with Frederick sending two of them, which supports Defendants' representation that this discussion involved legal advice. [Dkt. 200 at 12; dkt. 193-1 at 2–3.] Plaintiff does not challenge the assertion of privilege over the emails where Frederick was a direct recipient or sender. The challenged emails are instead the initial two emails from Attarian and Quigley that preceded Frederick's first email to them with the proffered legal advice and the email immediately following her advice. [Dkt. 193-1 at 2–3.] Defendants describe these emails as being sent in order to aid attorney Frederick's legal assessment and the latter email as discussing the legal advice that Frederick had given. [Dkt. 200 at 12.] The timing of the emails and that Frederick remained on the entire chain and actively participated on two separate occasions all support this representation. Accordingly, Defendants have established that entries 4, 6, and 7 were made for the purpose of obtaining legal advice and thus are protected by attorney-client privilege. *See Washtenaw Cnty.*, 2020 WL 3977944, at *5–6 (concluding that emails on which in-house counsel were copied were privileged because defendant adequately described those emails as involving legal advice on a specifically identified topic, particularly on a subject matter highly relevant in the case).

Next, Defendants identify entries 15, 23, 28, and 29 as follow-up to inquiries Donna Titmus, a Human Resources manager, received in April 2016 from Plaintiff regarding obtaining a copy of his probationary pilot reports and a letter of recommendation. [Dkt. 200 at 12–13; see dkt. 200-2, Exh. 2 to Defs.' Resp., Emails; dkt. 200-3, Exh. 3 to Defs.' Resp., Emails.] Defendants say Human Resources staff sought legal advice from attorney Frederick regarding the appropriate course of action; indeed, the non-privileged emails and the privilege log entries reflect that legal advice was solicited and given by Frederick. [Dkt. 200 at 12–13; dkt. 200-2 at 2 ("We will have to respectfully decline your request on the advice of United's Legal Department."); dkt. 200-3 at 2 ("I think we should run it by Sheila Frederick first."); dkt. 193-1 at 6, 9.] Viewed within this context, Defendants have sufficiently established that entries 15, 23, 28, and 29 involve the solicitation of legal advice even though Frederick is copied on the emails rather than a direct recipient. *See Washtenaw Cnty.*, 2020 WL 3977944, at *5–6.

As to entries 35 and 46, Defendants argue that these entries are privileged because they discuss legal advice rendered in connection with drafting a separation letter to give to Plaintiff. [Dkt. 200 at 13–14.] Defendants explain that non-privileged emails concerning the letter and drafts of the letter were produced, but these two emails on which attorney Frederick are copied are communications made in order to seek Frederick's legal advice, [dkt. 200 at 13–14], which it seems she provided immediately following the challenged emails, or at least in the same chain on the same day, see [dkt. 193-1 at 18–23]. Because attorney Frederick is copied on

those emails and they are part of a broader chain in which legal advice was solicited and provided, *Washtenaw Cnty.*, 2020 WL 3977944, at *5–6, Defendants have met their burden to show that entries 35 and 46 are protected by attorney-client privilege.

Finally, for the last batch of documents—entries 54, 56, 57, 58, 59, and 62, and Bates No. 000726—according to Defendants, these emails are "part of a larger privileged discussion involving in-house counsel, including with counsel's actual advice" about Plaintiff's separation from his employer. [Dkt. 200 at 14.] On March 21, 2016, attorney Frederick emailed non-attorneys Simons, Titmus, Bo Ellis, Chad Melby, and Andy Allen "regarding Separation of Probationary Pilot," copying Attarian. [Dkt. 193-1 at 28]. The rest of the email chain—which includes entries 54, 56, 57, 58, and 59—consisted of those recipients emailing each other and looping in Jennifer Thompson and Justin J. Doane, two non-attorney Labor Relations staff, while keeping attorney Frederick copied; the privilege log describe the emails as being made "for the purposes of legal advice." [Dkt. 193-1 at 23–28.] Given this context, Defendants have established that these challenged emails are privileged because they contain a discussion of legal advice.

Entry 62, however, was sent before the March 21 email from attorney Frederick and is the only challenged email without Frederick included on the chain; it is identified as an email from Thompson to Simons and Allen (Director of Pilot Contact Administration) with Doane and Melby (Human Resources Director) copied, and is classified as privileged because it "[r]eflects attorney client communication

8

with United's in-house counsel for the purposes of legal advice" concerning "Dismissal of Probationary Pilot." [Dkt. 193-1 at 26.] This description differs (by identifying the email as *reflecting* attorney client communication as opposed to *being* an attorney client communication) from the other emails over which privileged is claimed—those that are part of a chain in which attorney Frederick was copied and gave legal advice—and thus seemingly indicates that entry 62 still contains some discussion of legal advice obtained from outside of the email chain. Although close, the identification of the subject matter—the upcoming dismissal of Plaintiff—and the description of the content as "reflect[ing] attorney client communication" suffice to establish that this entry does include client confidences that are privileged even though attorney Frederick did not provide written advice in this email chain. *See Washtenaw Cnty.*, 2020 WL 3977944, at *4–6 (concluding that communications even between non-attorney employees are protected by attorney-client privilege because they reflected a discussion of legal advice on a specifically identified topic, particularly on a subject matter highly relevant in the case).

Accordingly, the Court finds that all of the documents Plaintiff requests in his Motion to Compel are protected by attorney-client privilege and, as a result, denies Plaintiff's motion, [dkt. 193].

**III.  Defendants' Motion to Compel Documents Improperly Withheld on the Basis of Privilege [Dkt. 191]**

Defendants move to compel Plaintiff to produce three categories of documents that they argue Plaintiff improperly withheld: (1) emails between Plaintiff and a friend that were withheld based on attorney-client privilege, (2) documents asserted

to be confidential union correspondence, and (3) documents covered by a purported employee-union representative privilege. [Dkt. 191; dkt. 192, Defs.' Mem. in Supp. of Mot. to Compel, at 4–14.] The Court addresses the first two categories in this Order, and reserves ruling on the third pending Plaintiff's updated *in camera* submission.

## A. Plaintiff's Communications with Attorney Erin Simmons

Defendants first seek emails between Plaintiff and Erin Simmons (who is an attorney) and the attachments to those emails that Plaintiff withheld on the basis of attorney-client privilege, arguing that Simmons was acting as Plaintiff's friend, not his attorney, and thus the privilege does not apply. [Dkt. 192 at 11–13.] Plaintiff argues that the eight emails[1] over which he claims attorney-client privilege— identified as entries 111, 113, 115–117, 160, 210, and 213 in his privilege log—are indeed privileged because he sought legal advice from Simmons in her capacity as a lawyer. [Dkt. 199, Pl.'s Resp. to Defs.' Mot. to Compel, at 9–11.] The Court has conducted an *in camera* review of these communications.

As discussed above, *supra* section II, Plaintiff bears the burden of establishing that the communications are privileged. *Washtenaw Cnty.*, 2020 WL 3977944, at *2. Plaintiff does not need to establish that an explicit attorney-client relationship existed, however, because the critical inquiry is whether he believed that he was consulting a lawyer in a professional capacity and had a "manifested

---

[1] Plaintiff has agreed to turn over the attachments to these emails, [dkt. 199 at 10 n.1], and so the Court does not discuss whether they are independently privileged.

intention to seek professional legal advice." *Westinghouse Elec. Co. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) (internal quotation marks omitted); *see also NPF Racing Stables, LLC v. Aguirre*, No. 18 C 6216, 2020 WL 1322847, at *4 (N.D. Ill. Mar. 20, 2020).

Here, Plaintiff identifies each of the withheld entries' subject matter—grievances and a settlement related to grievances—and contends that the emails were made "for the purpose of providing legal advice." [Dkt. 199-1, Pl.'s Exh. A to Resp. to Mot. to Compel, Pl.'s Privilege Log, at 10–11, 18.] The Court's review of the entries supports this assertion of privilege, as each email reflects a subject matter and a professional tone that suggests Plaintiff believed he was communicating with Simmons in her capacity as a lawyer and seeking legal advice rather than simply discussing matters with her as a friend. Thus, Plaintiff has established that the entries labeled as 111, 113, 115, 116, 117, 160, 210, and 213 on his privilege log are protected by attorney-client privilege, and the Court denies Defendants' request for these documents.

## B. Plaintiff's Communications Designated as "Confidential Union Communications"

Next, Defendants move to compel all documents withheld as "confidential union communications" on the bases that the documents contain search terms to which the parties agreed in the ESI Protocol and that they are not otherwise protected by privilege. [Dkt. 192 at 13–14.] Plaintiff contends that those documents—entries 21–22, 31–38, 54, 61, 72, 74–80, 146–50, 165–66, and 374–375—bear no relevance to this case and are confidential union communications that

include union bargaining strategy with United. [Dkt. 199 at 11–13.] Plaintiff has submitted to the Court these documents for *in camera* review.[2]

The Court need not reach the issue of whether a specific privilege protects the documents identified by Plaintiff as containing union communications. Because, while the ESI Protocol provides for the production of nonprivileged documents and data identified by the search, it is, however, simply a method of identifying documents that *may be relevant* in this case. See [dkt. 192-1, Exh. 1 to Defs.' Mem., ESI Protocol, at 2–5 ("The principal purpose of this PROTOCOL is to set forth protocols and procedures to identify responsive information contained in the personal devices and/or accounts of the Plaintiff as set forth in PROTOCOL Exhibit A ***for the purpose of producing relevant information*** [to] Defendant in response to written discovery.") (emphasis added).] Additionally, Federal Rule of Civil Procedure 26(b)(1)'s admonishment that discovery should be *relevant and proportional* to the needs of the case still guides the analysis.

Following the Court's *in camera* review of the documents at issue, the Court concludes that the documents withheld by Plaintiff are not likely to lead to the discovery of any relevant information. As Plaintiff explained in his response to Defendants' motion to compel, the documents involve union updates, union strategy and negotiations, or information otherwise irrelevant to this lawsuit. [Dkt. 199

---

[2] It appears that Plaintiff inadvertently has not submitted entries 61 and 72 for the Court's review. The Court nonetheless concludes that *in camera* review of those two documents is unnecessary, based on its review of the other similar submitted emails from the Association and Plaintiff's privilege log entries, because the entries make clear that these emails are routine reminders about upcoming union meetings.

at 11–13.]  For example, entries 21, 54, 74–80, and 165–66 are union news blasts sent to members, some of which are innocuous and some of which are related to the union's bargaining strategy.  Further, as to the emails and attachments exchanged between Plaintiff and Thad Conn and Craig Johnson that Defendants specifically identify in their motion—entries 22, 31–36, and 374–75—see [dkt. 192 at 13], the Court finds from its review that they discuss union bargaining updates that do not touch on any of the issues in Plaintiff's lawsuit.

Accordingly, for entries 21–22, 31–38, 54, 61, 72, 74–80, 146–50, 165–66, and 374–75, the Court declines to order Plaintiff to turn over those documents because they are not "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

## **CONCLUSION**

For the reasons explained above, Plaintiff's motion to compel [dkt. 193] is denied, and Defendants' motion to compel [dkt. 191] is denied in part.  The Court reserves ruling on the portion of Defendants' motion to compel concerning the purported employee-union representative privilege and the parties' requests for fees under Federal Rule of Civil Procedure 37, pending Plaintiff's further *in camera* submission that the Court ordered on January 4.

E N T E R:

Dated: January 11, 2021

_____

BETH W. JANTZ
United States Magistrate Judge