IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER N. BELCASTRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cv-01682 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| UNITED AIRLINES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christopher Belcastro, a former pilot for Defendant United Airlines, Inc. ("United"), has brought this action against United and Defendant James Simons alleging that he was unlawfully terminated because of his race and union activities. The Court previously dismissed Belcastro's wrongful discharge claim based on his union activities for lack of subject-matter jurisdiction. *See Belcastro v. United Airlines, Inc.*, No. 17-cv-01682, 2018 WL 1875537, at *6 (N.D. Ill. Apr. 19, 2018). Belcastro now asks this Court to reconsider its dismissal of that claim based on new evidence of Defendants' alleged anti-union animus. (Dkt. No. 180.) For the reasons that follow, Belcastro's motion for reconsideration is denied.

**BACKGROUND**

Although the operative complaint in this matter is currently the First Amended Complaint (Dkt. No. 54), the Court begins by briefly recounting the relevant facts from Belcastro's original complaint (Compl., Dkt. No. 1), because it is the subject of the ruling Belcastro asks this Court to reconsider.

As alleged there, Belcastro began working as a pilot for United on April 7, 2015. (Compl. ¶ 8.) Pursuant to United policy and the United Pilot Agreement ("UPA")—the collective

bargaining agreement between United and the Airline Pilots Association, International ("ALPA")—Belcastro's first 12 months of employment were "probationary." (*Id.* ¶¶ 8–9.) The UPA established at-will employment for probationary pilots and precluded them from filing grievances in connection with their termination. (*See* Mem. in Supp. of United's Mot. to Dismiss, Decl. of James Simons, Ex. 1 ("UPA") §§ 6-C, 17-B-6, Dkt. No. 17-2); *see also Belcastro*, 2018 WL 1875537, at *6 ("[T]he [UPA] clearly establishes at-will employment for probationary employees.").

On March 2, 2016, during his probationary period, Belcastro received two voicemails from United's crew scheduling department informing him of a reserve-day flying assignment. (Compl. ¶ 12.) In the second voicemail, crew scheduling asked Belcastro to call back but also advised that if he failed to do so, it would call him back after midnight. (*Id.*) Once Belcastro received the voicemails, he began to prepare for the assignment. (*Id.*) However, Belcastro did not call crew scheduling back to acknowledge the assignment because he expected that it would call him again after midnight. (*Id.*) The next morning, crew scheduling designated Belcastro as Unable to Contact ("UTC") due to his failure to acknowledge the reserve-day flying assignment. (*Id.*)

As a result of the UTC designation, Belcastro was ordered to appear before Defendant Simons, one of United's Chief Pilots. (*Id.* ¶ 14.) During the meeting, Simons acknowledged that Belcastro's probationary pilot reports were outstanding. (*Id.* ¶ 20.) A week later, Simons again met with Belcastro. (*Id.* ¶ 21.) Simons began the meeting by telling Belcastro that "[p]rior to coming to United, you had a lot of ALPA experience, so you know how this process works." (*Id.* ¶ 22.) Simons then gave Belcastro a letter offering him the opportunity to resign and end his employment on amicable terms. (*Id.*) Although Belcastro initially resisted resigning, he ultimately signed the letter of resignation to avoid the termination process. (*Id.* ¶¶ 22–23.)

Because Belcastro claims he was unlawfully forced to resign because of his race and union activities, he has brought the present lawsuit against United and Simons. His original complaint included a claim for wrongful discharge in violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* (Compl. ¶¶ 36–40.) Specifically, Belcastro alleged that he had engaged in protected union activities, Defendants knew of and harbored animus toward his involvement in protected union activities, and there was a causal connection between Defendants' anti-union animus and Belcastro's forced resignation. The wrongful discharge claim was one of the claims at issue in Defendants' partial motion to dismiss. Defendants argued that this Court lacked subject-matter jurisdiction over the wrongful discharge claim because it was a "minor dispute" requiring interpretation of the UPA and therefore subject to mandatory and exclusive arbitration under the RLA.

In response, Belcastro claimed that because, as a probationary pilot, the UPA did not provide him the right to grieve his termination, the RLA's mandatory dispute-resolution provisions did not preempt his wrongful discharge claim. Belcastro further contended that the RLA allows federal district courts to exercise jurisdiction over wrongful discharge claims predicated on an employer's anti-union animus. To show Defendants' anti-union animus, Belcastro pointed to his allegation that an ALPA representative told him that Simons "does not like the union," as well as Simons's reference to Belcastro's ALPA experience just before demanding he sign the letter of resignation. (Compl. ¶¶ 15, 22.)

Ultimately, this Court concluded that it lacked subject-matter jurisdiction over Belcastro's wrongful discharge claim and dismissed it, finding that the claim was a minor dispute subject to mandatory arbitration. It also held that Belcastro could not rely on his probationary status to avoid RLA preemption because at-will employment for probationary pilots was part of the larger

3

bargained-for agreement between United and ALPA. Belcastro subsequently filed his First Amended Complaint to remedy other deficiencies identified by the Court in its ruling on the partial motion to dismiss but did not attempt to revive the wrongful discharge claim. The parties then proceeded with discovery.

One month before the fact discovery deadline, Belcastro filed the present motion asking the Court to reconsider its dismissal of the RLA wrongful discharge claim. With its motion for reconsideration, Belcastro asserts that new evidence uncovered during discovery shows that his forced resignation was motivated by Defendants' anti-union animus. First, he presents three emails that Simons sent to three different supervisory colleagues at United following Belcastro's UTC designation but prior to Simons's first meeting with Belcastro. The three emails are substantively similar, with Simons inquiring about the process for terminating a probationary pilot, namely, Belcastro. (Mem. in Supp. of Mot. for Recons., Exs. C–D, F, Dkt. Nos. 181-3–181-4, 181-6.) In the emails, Simons expresses concern that Belcastro would be "a nightmare" to work with and manage, citing Belcastro's "attitude, reliability," and what he describes in one email as Belcastro's "playing games with the UPA" and in the other two emails as his "manipulation of the UPA." (*Id.*) Next, Belcastro points to the following portion of Simons's deposition testimony concerning Belcastro's previous union experience:

> I found out after this was all over [that Belcastro] had actually been in a leadership position at his previous airline in the union, which I didn't know anything about prior to meeting with him. So, to me, someone who was in that high of a position in the union knows how contracts work and know [*sic*] how gray areas can be manipulated and basically make it work for your own benefit.

(Mem. in Supp. of Mot. for Recons., Ex. E at PageID #3036–37, Dkt. No. 185-5.) Finally, Belcastro cites deposition testimony from United employees purportedly showing that Simons's close colleagues were aware of Belcastro's previous leadership roles at ALPA, testimony from a

United employee who worried that Belcastro's termination would negatively affect United's relationship with ALPA, and copies of Belcastro's probationary reports showing that he received uniformly positive job-performance reviews.

Based on this new evidence of Defendants' purported anti-union animus, Belcastro asks this Court to reconsider its dismissal of his RLA wrongful discharge claim. He argues that Defendants' anti-union animus converts his wrongful discharge claim into a "major dispute" over which the Court may exercise jurisdiction. Accordingly, he seeks leave to file a Second Amended Complaint to replead the wrongful discharge claim.

## DISCUSSION

Because the Court order of which Belcastro seeks reconsideration did not adjudicate all his claims and the action is ongoing, his motion arises under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). "Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was clearly erroneous and would work a manifest injustice." *Duminie v. Ne. Reg'l Commuter R.R. Corp.*, No. 17-cv-3030, 2020 WL 4505831, at *2 (N.D. Ill. Aug. 5, 2020) (internal quotation marks omitted). Such motions are generally judged by the same standards as a Federal Rule of Civil Procedure 59(e) motion to alter or amend a judgment. *Id.* For relief to be appropriate under Rule 59(e), the motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

5

In opposition to Belcastro's request, Defendants argue that none of the evidence he cites in his motion is actually new and, to the extent any of the evidence could be considered new, the motion still should be denied due to Belcastro's unreasonable delay in bringing the evidence to this Court's attention. Moreover, Defendants contend that even if the Court reaches the merits of Belcastro's motion, the new evidence does not establish that Defendants' actions were motivated by the type of extreme anti-union animus necessary for this Court's exercise of jurisdiction.

## I. Newly Discovered Evidence and Unreasonable Delay

As an initial matter, the Court must determine whether Belcastro's evidence is truly newly discovered and, if so, whether Belcastro unreasonably delayed filing the present motion. A motion for reconsideration cannot succeed if it is based on facts that were available to the moving party before the issuance of the underlying order. *See Walls v. Vre Chi. Eleven, LLC*, No. 16-cv-4048, 2020 WL 887488, at *4 (N.D. Ill. Feb. 24, 2020). Defendants' knowledge of Belcastro's union activities and his positive performance reviews cannot be newly discovered by Belcastro since those facts were alleged in his original complaint. (*See* Compl. ¶¶ 10, 19–20, 22.) On the other hand, the primary evidence of Defendants' purported anti-union animus—Simons's three emails and deposition testimony—is new. Belcastro's original complaint contained largely conclusory allegations of Defendants' anti-union animus, save for the allegation that Belcastro was told that Simons did not like the union. The new evidence allows Belcastro, for the first time, to provide at least colorable evidentiary support connecting his previous allegation of Simons's negative opinion of the union with Belcastro's forced resignation. For that reason, the Court believes it appropriate at least to consider whether that evidence is sufficient to revive Belcastro's wrongful discharge claim.

6

Defendants also contend that Belcastro unreasonably delayed moving for reconsideration. Specifically, they note that the present motion was filed almost two-and-a-half years after the Court dismissed the wrongful discharge claim and on the eve of the close of fact discovery. However, Rule 54(b) does not contain any express temporal limitation on when such a motion may be brought, so long as it is before "entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). And where a Rule 54(b) motion is based on newly discovered evidence, the moving party need only show that the evidence was unknown to it until after the district court issued the underlying order, and "also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks and alterations omitted); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." (internal quotation marks omitted)).

Here, it is undisputed that Belcastro first discovered Simons's emails during discovery and Simons first voiced his views concerning Belcastro's prior union leadership role during his deposition. Because discovery was stayed until after the Court dismissed the wrongful discharge claim, Belcastro has adequately demonstrated that he could not have discovered that evidence during the pendency of Defendants' partial motion to dismiss. Nonetheless, Defendants emphasize that Belcastro filed his motion for reconsideration well after Defendants produced Simons's emails and Simons's deposition was taken, asserting that this delay indicates inexcusable neglect or an improper purpose. The Court disagrees. Given the realities of reviewing voluminous discovery, a court is not well-positioned to judge the pace by which a party finds

evidence of any particular fact. Moreover, it would be unreasonable to require a party to file a Rule 54(b) motion immediately upon uncovering evidence warranting reconsideration. Indeed, it is entirely understandable why a party may wait until the discovery process is nearly complete to seek reconsideration, as even more favorable evidence may come to light; it is not inappropriate for a party to wait until it has a full view of the evidence so that it can come forward with its strongest case.

In short, the Court finds that Belcastro has come forward with enough new evidence to give him a colorable argument for reconsideration. Moreover, he did not unreasonably delay in filing his motion. For that reason, the Court proceeds to address whether the new evidence does, in fact, warrant reconsideration of its dismissal of Belcastro's wrongful discharge claim.

## II.   Anti-Union Animus

Previously, the Court dismissed Belcastro's RLA wrongful discharge claim because it concerned a "minor dispute" over which it lacked subject-matter jurisdiction. Under the RLA, a federal court determines whether it "may exercise jurisdiction over labor disputes involving interstate rail and air carriers by analyzing the nature of the dispute at hand." *Brotherhood of Ry., Airline & S.S. Clerks v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 405 (7th Cir. 1988). "All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001) (internal quotation marks omitted). Thus, minor disputes are "subject to mandatory and exclusive arbitration." *Id.* A minor dispute arises "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Id.* (internal quotation marks omitted). In other words, "[m]inor disputes involve controversies over the meaning of an existing collective

8

bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (internal quotation marks omitted). On the other hand, "[m]ajor disputes relate to the formation of collective bargaining agreements or efforts to secure them." *Id.* at 252. "[F]ederal courts may entertain suits involving major disputes." *Atchison*, 847 F.2d at 405.

Belcastro asks this Court to reconsider its classification of his wrongful discharge claim as a minor dispute based on the new evidence of Simons's anti-union animus. He contends that the anti-union motivation behind his forced resignation elevates his claim to the level of a major dispute over which this Court has jurisdiction. While Belcastro is correct that in some circumstances, a federal court may exercise jurisdiction over wrongful discharge claims predicated on anti-union animus, he is incorrect to refer to such claims as major disputes. Rather, there are certain instances where "a federal court may exercise jurisdiction over violations of the [RLA] without regard to the court's characterization of the dispute as major or minor." *Atchison*, 847 F.2d at 408.

In *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974), the Seventh Circuit held that an employer violates the RLA where its decision to terminate an employee is motivated by anti-union animus, and that such a claim "is within the jurisdiction of the district court." The wrongful discharge claim recognized in *Conrad* was deemed to arise under 45 U.S.C. § 152, Fourth, which prohibits employers from interfering with the organization of their employees. *See Conrad*, 494 F.2d at 916, 918. However, the Seventh Circuit has subsequently emphasized that "federal courts' jurisdiction over RLA violations is limited to exceptional circumstances requiring judicial intervention." *Atchison*, 847 F.2d at 408 (internal quotation marks omitted). For cases alleging an employer's anti-union animus, a federal court's jurisdiction is confined to "disputes that involve actions taken by an employer with specific intent to weaken or destroy a union." *Id.*

9

Moreover, merely alleging anti-union animus does not necessarily give rise to jurisdiction over an otherwise minor dispute. *Id.* at 411 n.5.

Although *Atchison* was decided after *Conrad*, its analysis implicitly recognized that *Conrad* remains good law. *See id.* at 409–411. Thus, the allegations in *Conrad* concerning the employer's conduct should be regarded as meeting *Atchison*'s standard for pleading anti-union animus.[1] And Belcastro argues that the facts here are on all-fours with those in *Conrad* and therefore this Court has jurisdiction. Indeed, at first glance, the facts in *Conrad* bear a striking similarity to those here, as *Conrad* involved a probationary pilot who was discharged despite receiving favorable performance reviews and, unlike non-probationary pilots, was precluded from grieving his discharge by the operative collective bargaining agreement. *Conrad*, 494 F.2d at 915, 917.

---

[1] It is worth noting that the *Atchison* court described *Conrad* as involving a plaintiff who was discharged before the union was certified and therefore could not avail himself of either union representation or an administrative hearing. *Atchison*, 847 F.2d at 409–10. But the facts in *Conrad* indicate that there was a collective bargaining agreement between the union and the employer during the plaintiff's employment. *Conrad*, 494 F.2d at 915. Indeed, it was a provision of that collective bargaining agreement that deprived probationary employees like the plaintiff of their right to an investigation and hearing before discharge. *Id.* Based on this apparently mistaken understanding, *Atchison* grouped *Conrad* with those cases where jurisdiction over RLA violations was allowed because the "extrajudicial dispute-resolution framework of the RLA is either unavailable or ineffective." *Atchison*, 847 F.2d at 411. Thus, *Atchison* did not regard *Conrad* as a case where jurisdiction was predicated exclusively on the employer's anti-union animus, although it did recognize that *Conrad* also involved employer conduct that demonstrated anti-union animus. *Id.* at 411 & n.4. The distinction between the pre-certification and post-certification posture of a dispute is important because the Supreme Court has recognized that § 152, Fourth, has long been viewed "as addressing primarily the precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989). And *Atchison* at least implicitly recognized that distinction as well. *See Atchison*, 847 F.2d at 410 (noting that the timing of the plaintiff's discharge in *Conrad* was "crucial" because when an employee is terminated before the union is certified, "the RLA's dispute-resolution mechanism could not address [his] claims."). Other courts have held that once the union is certified, employees' rights under § 152, Fourth, "are narrowly circumscribed" because "represented employees may avail themselves of the other dispute resolution processes created by the RLA." *Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc.*, 399 F.3d 89, 103 (1st Cir. 2005). With this in mind, the Court deems it prudent here to proceed cautiously when applying *Conrad* to new factual circumstances.

The key difference between the present case and *Conrad* is the quality of evidence showing the employer's anti-union animus. In *Conrad*, a flight manager wrote to one of the employer's vice presidents that the plaintiff's "over-activity with the local council as an apprentice member of ALPA, coupled with inquiries regarding company files to our secretary lead to the conclusion that potential trouble will be avoided by acceptance of [the plaintiff's] resignation." *Id.* at 917. That statement strongly suggests a direct link between the plaintiff's union "over-activity" and his discharge, creating a genuine issue of material fact as to whether the plaintiff's protected activities were a substantial or motivating factor in his discharge. *See id.* at 918.

By contrast, here, Simons's reference to Belcastro's manipulating or playing games with the UPA is not such a direct expression of hostility to Belcastro's protected union activities. Rather, Simons's reference to the UPA should be viewed in context with his other concerns regarding Belcastro's attitude and reliability. That is, Simons is expressing concern that Belcastro is the type of employee who falls short of expectations but seeks refuge in the technicalities of the UPA; he may have viewed Belcastro as the type of pilot who, for example, uses sick days for flight assignments he can actually make. That interpretation is bolstered by Simons's testimony that Belcastro "knows how contracts work and know [*sic*] how gray areas can be manipulated and basically make it work for your own benefit." (Mem. in Supp. of Mot. for Recons., Ex. E at PageID #3036–37.) Although Simons acknowledged that Belcastro acquired this knowledge through his previous leadership position with ALPA, it is clear that Simons's concern was not with Belcastro's union activities but with Belcastro applying the knowledge he acquired through those activities to achieve illegitimate ends, *i.e.*, exploiting the UPA. Unlike in *Conrad*, where the

employer directly criticized the plaintiff's involvement with the union, Simons's comment was directed at Belcastro's fit as an employee and only indirectly implicated his union activities.

An employer who discharges an employee over concern that the employee will exploit a collective bargaining agreement does not, without more, act with an intent to destroy or weaken a union. Allowing jurisdiction over Belcastro's alleged RLA violation would unnecessarily insert this Court into what is essentially an issue of United's enforcement of workplace standards, which disserves the RLA's goal of ensuring "the prompt and orderly settlement of all disputes growing out of grievances," 45 U.S.C. § 151(a). Thus, Belcastro's new evidence does not supply the "exceptional circumstances" allowing this Court to assert jurisdiction over the alleged RLA violations. The Court expresses no view as to whether Defendants' conduct was permissible under the UPA because that is exactly the kind of minor dispute over which this Court lacks jurisdiction. Consequently, Belcastro is not entitled to leave to replead his previously dismissed RLA wrongful discharge claim.

## CONCLUSION

For the foregoing reasons, Belcastro's motion for reconsideration (Dkt. No. 180) is denied.

ENTERED:

Dated: March 29, 2021

_____
Andrea R. Wood
United States District Judge