IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPER N. BELCASTRO, | |
| Plaintiff, | |
| v. | Case No. 17 C 1682 |
| UNITED AIRLINES, INC., | Magistrate Judge Beth W. Jantz |
| and | |
| JAMES SIMONS, | |
| Defendants. | |

## MEMORANDUM OPINION & ORDER

Plaintiff sued Defendants United Airlines, Inc. ("United") and James Simons, raising, as relevant here, claims for race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and for defamation and tortious interference with employment under Illinois state law. Before the Court is the remaining portion of Defendants' Motion to Compel Documents Improperly Withheld on the Basis of Privilege, [dkt. 191], specifically Defendants' request for documents over which Plaintiff has claimed an employee-union representative privilege, and the parties' requests for fees under Federal Rule of Civil Procedure 37. For the reasons explained below, Defendants' motion to compel is denied in part and granted in part, and the parties' requests for fees are denied.

1

## RELEVANT BACKGROUND

The following allegations are drawn from Plaintiff's amended complaint. [Dkt. 54, Am. Compl.] In April 2015, United hired Plaintiff Christopher Belcastro as a First Officer pilot with his first 12 months as a "probationary period." While working for United, Plaintiff was a member of the Airline Pilots Association, International (the "Association") and participated in union activities. On March 3, 2016, United's crew scheduling department designated Plaintiff as "Unable to Contact" after they could not reach him about a reserve day flying assignment. Plaintiff asked the Association to help overturn the designation, explaining that crew scheduling had never called him after midnight to confirm his assignment. The Association succeeded in getting crew scheduling to remove the designation, but Defendant Chief Pilot James Simons later had it reinstated. On March 17, Simons met with Plaintiff and told him that his "probationary pilot reports" were "outstanding," but that he would receive a "Letter of Counsel" for the designation.

On March 25, Simons met privately with Plaintiff and asked him to sign a letter of resignation, explaining that if he declined he would have to go through the termination process. During the meeting, Simons, who is Black, allegedly commented to Plaintiff, who is White, that he did not know why United hired pilots like Plaintiff and that his "Black friend who flies Air Force One would love to be a pilot at United but, for some reason, hasn't gotten hired yet." After consulting with his union representative, Plaintiff signed the resignation letter. United allegedly later posted a snapshot of Plaintiff's personnel file, indicating that he had been

2

terminated, on a popular pilot website. Defendants largely deny these allegations of wrongdoing. [Dkt. 57, Ans. to Am. Compl.]

In 2017, Plaintiff filed suit in this Court. [Dkt. 1, Compl.] After lengthy discovery and extensive motion practice on various discovery issues, on October 13, 2020, the Court set a final deadline of October 16 for any remaining motions related to outstanding discovery. [Dkt. 189.] On October 15, the parties met and conferred regarding outstanding discovery issues; at the meeting, both parties raised purported deficiencies in the other side's privilege logs. On October 16, Plaintiff and Defendants each filed motions to compel some of the withheld documents. [Dkt. 191, Defs.' Mot. to Compel; dkt. 193, Pl.'s Mot. to Compel.] On November 4 and November 25, the Court ordered Plaintiff to produce for *in camera* inspection the documents over which he claimed privilege. [Dkt. 201; dkt. 208.]

On January 4, 2021, the Court ordered Plaintiff to resubmit the documents over which he claimed an employee-union representative privilege in order to clearly mark the portions for which privilege was being claimed. [Dkt. 210.] Separately, on January 11, the Court denied Plaintiff's motion to compel and denied Defendants' motion to compel in part, reserving ruling on the portion of Defendants' motion concerning the purported employee-union representative privilege and the parties' requests for fees. [Dkt. 211.] As ordered, Plaintiff resubmitted the documents to the Court on January 18, which this Court has now reviewed *in camera*.

3

**DISCUSSION**

I. **Legal Principles**

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court has "extremely broad discretion in controlling discovery." *Coleman v. City of Chicago*, No. 1:18-cv-00998, 2019 WL 7049918, at *5 (N.D. Ill. Dec. 23, 2019) (internal quotation marks omitted).

Federal common law governs assertions of privileges for claims arising under federal law. *Hamdan v. Indiana Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018). Generally, evidentiary privileges are to be construed narrowly because they can operate to impede the search for truth. *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009); *see also Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). The party asserting privilege has the burden to demonstrate that it applies. *Crabtree v. Experian Inf. Sols., Inc.*, No. 1:16-cv-10706, 2017 WL 4740662, at *1 (N.D. Ill. Oct. 20, 2017). Further, blanket privileges are disfavored, meaning that the party must establish that the privilege applies on a document-by-document basis. *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020).

II. **Defendants' Motion to Compel**

Defendants seek emails and attachments that Plaintiff asserts are protected by an employee-union representative privilege and, in some instances, also by an

attorney-client privilege. [Dkt. 192, Defs.' Mem. in Supp. of Mot. to Compel, at 4–11; dkt. 205, Defs.' Reply, at 2–9.] Defendants maintain that no employee-union representative privilege has been recognized in federal law, and that Plaintiff has made an insufficient showing in this case to recognize any such privilege. [Dkt. 192 at 5–11; dkt. 205 at 2–9.] Defendants also contend that, even if an employee-union representative privilege applies, Plaintiff has waived that privilege by selectively producing other privileged documents.[1] [Dkt. 192 at 8–10.] Additionally, Defendants argue that Plaintiff has not established that the documents over which attorney-client privilege is also claimed are privileged on that ground. [Dkt. 192 at 11; dkt. 205 at 9–10.]

Plaintiff counters that this Court should recognize and apply an employee-union representative privilege, relying on a 2011 opinion from this District. [Dkt. 199, Pl.'s Resp. to Defs.' Mot. to Compel, at 4–6.] Further, Plaintiff argues that he has not waived the purported privilege by producing some documents covered by it, because he has not produced those documents in a selective and misleading manner in order to obtain a strategic advantage in the

---

[1] Similarly, Defendants argue that Plaintiff waived privilege over all documents because his privilege log is inadequate, [dkt. 192 at 10–11], but the Court disagrees. As with Defendants' own privilege log, Plaintiff's privilege log provides a description of the document, the date, the sender, the recipient, and the privileged claimed along with a brief explanation of why the document is privileged. *See* [dkt. 193-1, Exh. A to Pl.'s Mot. to Compel, Defs.' Revised Suppl. Priv. Log]; [dkt. 199-1, Exh. A to Pl.'s Resp. to Defs.' Mot. to Compel, Pl.'s Fourth Suppl. Priv. Log]. Therefore, the Court finds that Plaintiff's log here is sufficient to assess his claims of privilege and declines to find waiver on this basis. *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 157 (rejecting a global waiver based on an inadequate privilege log).

5

lawsuit. [Dkt. 199 at 6–7.] Finally, Plaintiff argues that many of the documents sought are independently protected by an attorney-client privilege. [Dkt. 199 at 7.]

The Court has reviewed Plaintiff's *in camera* submissions of the emails and attachments, and specifically focuses its review on the highlighted portions of those documents (over which Plaintiff affirmatively represented in his submission to the Court that he is asserting privilege). After careful review, and as detailed below, the Court does not find that an employee-union representative applies here, and thus concludes that Plaintiff must turn over the documents withheld solely on the basis of a purported employee-union representative privilege. Further, the Court determines that Plaintiff has appropriately asserted an attorney-client privilege over some of the withheld documents and has not waived that privilege, but other documents are not privileged and must be disclosed.

### A. The Court declines to apply an employee-union representative privilege in this case.

Federal Rule of Evidence 501 instructs federal courts to look to the common law "as interpreted by United States courts in the light of reason and experience" when deciding whether to recognize a federal common-law evidentiary privilege. "Exceptions from the general rule disfavoring testimonial privileges may be justified [ ] by a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

"No controlling authority establishes a federal privilege protecting employee-union representative communications." *Wong v. Bd. of Educ. of Comm.*

6

*Consol.*, No. 11-CV-07357, 2013 WL 6571326, at *2 (N.D. Ill. Sept. 30, 2013). At best, as Plaintiff acknowledges, "the Seventh Circuit is undecided as to whether the employee-union representative [privilege] should apply." [Dkt. 199 at 4.] In a case in which the Seventh Circuit found that the presence of a third-party union official to help an attorney prepare to represent a police officer did not destroy the attorney-client privilege, the Court clarified that its holding did not "suggest that an independent privilege exists for communications between an individual and his union representative." *Jenkins*, 487 F.3d at 491 n.6. The parties have identified only two cases in this District since *Jenkins* that have addressed whether to apply an employee-union representative privilege.

Plaintiff relies on a 2011 case in which the Court applied a federal common-law privilege for employee-union representative communications to those exchanges made "(1) in confidence; (2) in connection with 'representative' services relating to anticipated or ongoing disciplinary proceedings; (3) between an employee and his union representative; (4) where the union representative is acting in his or her official representative capacity." *Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052, 1056 (N.D. Ill. 2011). The Court reasoned that whether to recognize a common-law privilege requires a case-by-case analysis that must "take into account both the public and private interests that the privilege serves, as well as the evidentiary benefit that would result if the privilege were denied." *Id.*

As part of its analysis, *Bell* recognized that Illinois has codified a particularly broad union agent-union member privilege. *Id.*; *see* 735 ILCS 5/8-803.5. The Court

7

concluded that a narrower federal privilege was appropriate, analogizing the union representative representing a police officer in connection with disciplinary proceedings following an alleged use of excessive force in that case to an attorney advising his client. *Bell*, 806 F. Supp. 2d at 1056–57. Critically, however, the Court concluded in *Bell* that applying the privilege did not in that case shield "crucial evidence," because there was ample other evidence about what occurred during the incident other than the police officer's account to the union representative, including video footage and eyewitness testimony. *Id.* at 1057.

In a 2013 case, the Court acknowledged the privilege formulated in *Bell,* but expressed "no opinion" regarding whether it would recognize a similar privilege, finding instead that the facts in its case were sufficiently distinguishable that the privilege was inapplicable. *Wong*, 2013 WL 6571326, at \*3. There—involving a dispute over interview notes made by union representatives—the communications were not in the context of a disciplinary proceeding for the interviewees, involved third party, non-privileged interviews, and the union officials were not acting in a representative capacity for the interviewees while sitting in on those interviews. *Id.* The Court explained that the interview notes were important evidence that could be used to refresh witnesses' recollections or to impeach them, and thus concluded that protecting the notes would unacceptably impede the search for the truth. *Id.*

At first glance, the facts in Plaintiff's case more closely align with *Bell* than *Wong*. Plaintiff is seeking to apply an employee-union representative privilege to communications between him and several union members—most notably his

8

assigned union representative, George Riley—that arose after Plaintiff received notice of the meeting with Defendant Chief Pilot Simons and culminated in Plaintiff receiving a "Letter of Designation" and later being asked to resign. *See* [dkt. 199 at 5]. Thus, the communications involve Plaintiff himself, as in *Bell* (as opposed to third parties as in *Wong*), and arose in the disciplinary context. *See Bell*, 806 F. Supp. 2d at 1056–57; *Wong*, 2013 WL 6571326, at *3.

But *Bell* is distinguishable in a key respect: the evidence at issue here—Plaintiff's emails with his union representatives about the circumstances that led to his discipline and what occurred—is critical and singular enough that to shield it from disclosure would be to unacceptably impede the search for truth. *See Bell*, 806 F. Supp. 2d at 1057 ("[T]his Court is also mindful that courts should be suspicious of recognizing privileges that would tend to shield evidence crucial to the legal inquiry.") Although Plaintiff undoubtedly had an interest in having honest conversations with his union officials, here Defendants also have an important interest in learning what Plaintiff's narrative was contemporaneously with the events at issue in the lawsuit. Unlike in *Bell*, Defendants do not have an equally good way to obtain that evidence; Plaintiff's deposition is necessarily a post-hoc recollection of the events, and there is no video or eyewitness testimony—as there was in *Bell*—of the sequence of events precipitating Plaintiff's resignation. Simply put, the "evidentiary benefit that would result if the privilege were denied" is significant here and weighs heavily in favor of not applying any such privilege. *Id.* at 1056.

9

Moreover, the Court has an obligation to construe privileges narrowly, *Jenkins*, 487 F.3d at 490, and concludes that recognizing an employee-union representative privilege in this case would not be in line with "reason and experience." Fed. R. Evid. 501. Indeed, several other federal courts have declined to apply an employee-union representative privilege. *See, e.g., Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 477–78 (S.D.N.Y. 2019) (distinguishing *Bell*); *NetJets Aviation, Inc. v. NetJets Assoc. of Shared Aircraft Pilots*, No. 2:17-MC-00038-GCS, 2017 WL 3484101, at *4 (S.D. Ohio Aug. 15, 2017) (collecting cases and concluding that "vast majority of courts" have declined to apply *Bell*'s employee-union representative privilege); *Curry v. Contra Costa Cnty.*, No. C-12-03940 WHO (DMR), 2013 WL 4605454, at *3 (N.D. Cal. Aug. 28, 2013) (declining to recognize "a union-employee communications privilege").

Additionally, it is unclear—and Plaintiff did not attempt to establish—to what extent other states, aside from Illinois, have laws recognizing a similar privilege. *Cf. Jaffee*, 518 U.S. at 12–15 (recognizing a federal common-law psychotherapist privilege and finding it "significant" that all 50 states and the District of Columbia recognized some form of the privilege, and that the Federal Rules Advisory Committee had recommended the privilege be enumerated in its proposed privilege rules). Aside from *Bell*, Plaintiff has not identified any other support for applying a new privilege in this context. *See* [dkt. 199 at 4–6]. As in *Wong*, Plaintiff has not established whether this type of privilege is widely accepted, nor that a confidential relationship between a union representative and a union

10

member "has the same strong historic roots as those generally afforded the protection of a common law privilege, such as husband and wife, clergy and communicant, or attorney and client." 2013 WL 6571326, at *4. Because Plaintiff has not established that applying an employee-union representative privilege in this case would invoke a "'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth,'" the Court finds that it should not be recognized here. *Jaffee*, 518 U.S. at 9 (internal citation omitted).

Accordingly, the Court orders Plaintiff to produce from his fourth supplemental privilege log entries 39, 51, 53, 55, 67, 69, 70, 71, 81, 82, 83, and 84, as no other privilege was claimed for these entries.[2]

### B. The Court finds that the attorney-client privilege independently applies to a portion of the requested documents.

Because Plaintiff also asserts that attorney-client privilege applies to a large swath of the documents at issue here and that he should be permitted to withhold them on that basis, [dkt. 199 at 7; *see, e.g.,* dkt. 199-1 at 6–8], the Court has independently reviewed these documents and addresses Plaintiff's assertions of attorney-client privilege. As an initial matter, upon resubmission to the Court on January 18, 2021, Plaintiff explained that he had "highlighted the specific portions [of the documents] that he claims are protected by privilege." Thus, the Court finds

---

[2] In Plaintiff's submissions to the Court, counsel affirmatively represented that all attachments to these emails were previously produced to Defendants except for two over which Plaintiff was asserting privilege (which are addressed in this Order as entry 70 and entry 179). The Court therefore has not addressed the attachments identified as privileged on Plaintiff's privilege log because it assumes they have already been produced.

11

that Plaintiff has waived privilege as to the entries that were submitted without highlighting—entries 66, 68, 94, 107, 108, 135, 136, 143, 156, 167, 172, 175, 199, and 244 from Plaintiff's fourth supplemental privilege log.

In order to establish that attorney-client privilege applies, Plaintiff must show that "(1) legal advice of any kind was sought, (2) the legal advice was sought from a professional legal advisor in his or her capacity as such, (3) the communications related to that purpose, and (4) the communication was made in confidence." *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *2 (N.D. Ill. July 14, 2020). Plaintiff does not need to establish that an explicit attorney-client relationship existed, however, because the critical inquiry is whether he believed that he was consulting a lawyer in a professional capacity and had a "manifested intention to seek professional legal advice." *Westinghouse Elec. Co. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) (internal quotation marks omitted); *accord NPF Racing Stables, LLC v. Aguirre*, No. 18 C 6216, 2020 WL 1322847, at *4 (N.D. Ill. Mar. 20, 2020).

Since the attorney-client privilege protects only communications that were intended to be confidential, "the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney." *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). The presence of the third party defeats the claim of privilege because the privilege goes no further than is necessary to

secure a party's freedom to consult with an attorney, and a third party's presence (other than an agent) is unnecessary for such communications. *Id.*

First, Plaintiff has met his burden to establish that the attorney-client privilege applies to entries 73, 177, 178, and 214, because they are communications made in confidence related to Plaintiff seeking legal advice from a union lawyer. *See Walgreen Co.*, 2020 WL 3977944, at *2. Entry 73 is an email from "Hanson, John, Representation," identified as "Labor Relations Counsel" in his signature, in which Hanson provides legal advice to Plaintiff. Entries 177 and 178 are emails between Plaintiff and "Schleder, John, Representation" in which Plaintiff solicits a legal opinion from Schleder concerning a potential phone call with a United executive and Schleder responds. Finally, entry 214 is an email from Plaintiff to Schleder seeking legal advice following United's settlement offer concerning the Association's grievance on Plaintiff's behalf. Therefore, the Court finds that entries 73, 177, 178, and 214 are covered by the attorney-client privilege and do not need to be produced.

Second, a large batch of the emails are communications between Plaintiff and a union lawyer, but they cannot be fairly read as seeking or reflecting legal advice. *See Towne Place Condo. Assoc. v. Phil. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 894 (N.D. Ill. 2018) ("[P]rogress or status reports, investigation summaries, and general updates are generally not privileged merely because they were written by a lawyer to the client."). For example, entries 103, 104, 105, and 106 are an email chain between Plaintiff and attorney Hanson that concerns administrative status updates

13

regarding the grievance preparation process and timing of filing a grievance. And entry 173 is an email in which Plaintiff is informing Schleder that he intends to call a United executive but he does not seek advice concerning the call. In sum, entries 103, 104, 105, 106, 110, 158, 169, 173, 180, 233, 235, 236, 247, and 250 all fall under this category and are thus not privileged and must be produced.

Third, several of the emails over which Plaintiff asserts attorney-client privilege are not privileged because they are not communications with an attorney and do not reveal any substantive attorney-client communication. Instead, these communications are emails between Plaintiff and his union representative, George Riley (or another union representative), that at most reflect Plaintiff asking these representatives (whom the Court assumes are non-lawyers based on their differing email titles compared to the identified attorneys herein, and Plaintiff's failure to provide any evidence otherwise) for advice regarding how to proceed during the disciplinary proceedings. Accordingly, Plaintiff's entries 62, 63, 64, 92, 126, 127, 140, 151, 152, 153, 164, 171, 174, and 182 are not protected by attorney-client privilege and must be turned over to Defendants.

Fourth, entry 179—which is an attachment to entry 178 from Plaintiff to attorney Schleder—is not privileged in so far as it is the same attachment to entry 182,[3] which is an email from Plaintiff to non-lawyer Riley about the same subject.

---

[3] The Court is basing its assumption that the attachments are the same on the similar timing of the emails and the similar document titles. To the extent the documents are different, Plaintiff need only provide the version sent to union representative Riley.

14

Plaintiff sought legal advice from attorney Schleder for the document in entry 178, but then also sought separate advice from Riley in his capacity as a union representative for the document in entry 182. The attachment provided to Riley is not privileged because it was produced independently to Riley for purposes of non-legal advice, and therefore it must be produced to Defendants. *See id.* at 896.

Fifth, the remaining entries at issue—entries 86, 98, 99, 142, 144, 186, 188, 218, and 219—all involve correspondence in which a union lawyer is copied, but also at least one other non-lawyer individual is included on the chain. Entries 218 and 219 are not privileged because, despite being emails between Plaintiff and Schleder, included on the chain are several additional union officials—including the union chairman—and Plaintiff has not established that they were acting as Plaintiff's agents or necessary for the administration of legal advice. *See Evans*, 113 F.3d at 1462. Similarly, entry 86 is an email from Plaintiff to attorney Hanson that would be privileged except Plaintiff forwarded it on to the non-lawyer union chairman, and he has not established that the chairman was assisting the lawyer as his agent in the provision of legal advice. *Id.* Entry 144 is an email from Plaintiff to lawyer Schleder and another non-lawyer union member; it is not privileged because it includes the non-lawyer and Plaintiff does not seek legal advice. *See Walgreen Co.*, 2020 WL 3977944, at *2. Entries 186 and 188 are an email from non-lawyer Riley, with lawyer Schleder copied, informing Plaintiff of the settlement offer and the union's plans and Plaintiff's emailed response to that news; the first email is akin to a case status update rather than legal advice, and Plaintiff's response does not

15

request legal advice. *See Towne Place*, 284 F. Supp. 2d at 896 ("[S]imply copying a lawyer on an otherwise non-privileged communication . . . will not transform the non-privileged document into a privileged one."). Plaintiff must therefore produce entries 86, 144, 186, 188, 218, and 219 to Defendants.

By contrast, entries 98, 99, and 142 are privileged because even though they include non-lawyer Riley at some point in the chain, Riley is acting as Plaintiff's agent. *See Evans*, 113 F.3d at 1462. Entries 98 and 99 are an exchange between Plaintiff and attorney Hanson with information provided by Plaintiff in order to seek from Hanson potential grievance options; this correspondence is then forwarded from Plaintiff to Riley for Riley's review in order to facilitate assistance with the grievance that Hanson is preparing.[4] The next day, in entry 142, non-lawyer Riley emails lawyer Hanson with Plaintiff copied, and Riley is plainly acting as Plaintiff's agent and requesting that Schleder speak directly to Plaintiff regarding a different legal question in the email. Because Riley is facilitating the conversation in a limited way in order to further legal advice between Plaintiff and the union lawyer in entry 142 and because he was forwarded entries 98 and 99 for the limited purpose of assisting Hanson with grievance options, the Court concludes that entries 98, 99, and 142 are covered by the attorney-client privilege, *see Jenkins*, 487 F.3d at 491 (finding presence of union representative did not destroy

---

[4] Non-privileged entry 126—which is an email from Riley to Plaintiff the day before Plaintiff forwards this correspondence—confirms this interpretation, as Riley states that he is assisting with the grievance and plans to speak with attorney Hanson.

16

attorney-client privilege where it was for limited purpose of assisting attorney), and need not be produced to Defendants.

Last, the Court addresses Defendants' argument concerning subject matter waiver. Defendants argue only that Plaintiff has waived any employee-union representative privilege by producing some documents subject to the privilege while withholding others. [Dkt. 192 at 8–10.] Because the Court has declined to apply the employee-union representative privilege here, it has already ordered the production of any documents withheld solely on that ground.

In any case, for the relatively small number of remaining documents that the Court has found protected by attorney-client privilege, the Court declines to find any subject matter waiver. After exhaustive review of the production necessitated by the parties' filings, the Court finds that Plaintiff has not selectively produced privileged documents while withholding the entries identified as attorney-client privileged. *See Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 715–16 (N.D. Ill. 2015) (declining to find subject matter waiver because plaintiff did not seek to use disclosed, favorable privileged information while withholding unfavorable privileged information).

## III. Parties' Requests for Fees Under Federal Rule of Civil Procedure 37

As a final matter, the parties request fees incurred in bringing and defending against their respective motions to compel. [Dkt. 192, Defs.' Mem. in Supp. of Mot. to Compel, at 14; dkt. 193, Pl.'s Mot. to Compel, at 5; dkt. 199, Pl.'s Resp. to Defs.' Mot. to Compel, at 14; dkt. 200, Defs.' Resp. to Pl.'s Mot. to Compel, at 11.]

Under Federal Rule of Civil Procedure 37, the party who prevails on a motion to compel is entitled to the "reasonable expenses incurred in [making or opposing] the motion, including attorney's fees" unless the position taken by the non-prevailing party "was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. Proc. 37(a)(5)(A–B). If a motion to compel is granted in part and denied in part, the court may "apportion the reasonable expenses for the motion." Fed. R. Civ. Proc. 37(a)(5)(C). "When 'the dispute over discovery between the parties is genuine, . . . the losing party is substantially justified in carrying the matter to the court' and the award of expenses is not indicated." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 223 (N.D. Ill. 2013) (quoting Fed. R. Civ. P. 37(a) (1970 Committee Notes), and declining to award fees).

The discovery disputes here were genuine. Each side presented colorable arguments regarding the privilege issues, which necessitated the Court's *in camera* review of purportedly privileged documents and careful parsing of the privilege issues in two written opinions. *See also* [dkt. 212.] Thus, the Court concludes that the parties were substantially justified in bringing the disputes to the Court, and therefore any award of fees to either party under Federal Rule of Civil Procedure 37 is not appropriate.

## CONCLUSION

For the reasons explained above, Defendants' motion to compel [dkt. 191] is granted in part and denied in part. The Court orders Plaintiff to produce the entries from Plaintiff's fourth supplemental privilege log that the Court has found

18

not privileged above to Defendants within 7 days of this Order. Additionally, the Court denies both parties' requests for fees under Federal Rule of Civil Procedure 37. As no further discovery is anticipated, [dkt. 215, Feb. 24, 2021 Joint Status Report], discovery is closed following the production of these documents ordered above. If the parties would like a settlement conference with Magistrate Judge Jantz, they must email her courtroom deputy for available dates by 05/10/2021; otherwise, the referral will be closed.

E N T E R:

Dated: April 19, 2021

BETH W. JANTZ
United States Magistrate Judge